Amy K. Todd (SBN 208581)
Mariela R. Romo (SBN 341657)
JACKSON LEWIS P.C.
225 Broadway, Suite 1800
San Diego, California 92101
Tel: (619) 573-4900
Fax: (619) 573-4901
Amy.Todd@jacksonlewis.com
Mariela.Romo@jacksonlewis.com

Kelli M. Dreger (SBN 267404)
JACKSON LEWIS P.C.
200 Spectrum Center Drive, Suite 500
Irvine, California 92618
Tel: (949) 885-1360
Fax: (949) 885-1380
Kelli.Dreger@jacksonlewis.com

Attorneys for Defendant
NORDSTROM, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HEIDI KING, Individually and for Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>NORDSTROM, INC.,<br><br>Defendant. | Case No.: 8:26-cv-00121-MRA-(KESx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT NORDSTROM, INC.'S MOTION TO COMPEL ARBITRATION OF INDIVIDUAL CLAIMS AND STAY THIS ACTION**<br><br>Date: March 24, 2026<br>Time: 10:00 a.m.<br>Courtroom: 9B<br>Judge: Hon. Monica Ramirez Almadani<br><br>Complaint filed: December 11, 2025<br>Case Removed: January 15, 2026<br>Trial Date: Not Yet Set |

# TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. STATEMENT OF RELEVANT FACTS ........ 2

A. The Parties. ........ 2

B. The Parties' Dispute Resolution Process. ........ 2

1. The Initial 2022 DRA. ........ 3

2. The 2024 DRA. ........ 4

C. Procedural History ........ 5

D. Nordstrom's Efforts to Meet and Confer ........ 5

III. ARGUMENT ........ 6

A. The 2024 DRA Is Governed By The Federal Arbitration Act. ........ 6

B. The Parties Delegated Gateway Issues to The Arbitrator. ........ 7

1. The parties entered into a valid agreement. ........ 7

2. The DRAs contain a delegation clause. ........ 12

C. The Parties' DRAs Are Enforceable. ........ 13

1. The DRAs cover Plaintiff's claims. ........ 13

2. The DRAs satisfy the *Armendariz* factors. ........ 14

D. Plaintiff's Claims Must Be Arbitrated on An Individual Basis. ........ 17

1. The Class Action Waiver is valid and enforceable. ........ 17

IV. CONCLUSION ........ 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allied-Bruce Terminix Cos., Inc. v. Dobson*,
513 U.S. 265 (1995) .... 6

*Am. Express Co. v. Italian Colors Restaurant*,
570 U.S. 228 (2013) .... 13, 17

*Armendariz v. Foundation Health Psychcare Services, Inc.*,
24 Cal.4th 83 (2000) .... 14, 15, 16

*Asmus v. Pac. Bell*,
23 Cal.4th 1 (2000) .... 10

*AT & T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) .... *passim*

*Baghdasarian v. Macy's Inc.*,
2025 U.S. App. LEXIS 7838 (9th Cir. Apr. 3, 2025) .... 9

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) .... 12

*Buckeye Check Cashing, Inc. v. Cardegna*,
546 U.S. 440 (2006) .... 6, 10

*Circuit City Stores, Inc. v. Adams*,
532 U.S. 105 (2001) .... 6, 10

*Citizens Bank v. Alafabco, Inc.*,
539 U.S. 52 (2003) .... 6

*Cox v. Ocean View Hotel Corp.*,
533 F.3d 1114 (9th Cir. 2008) .... 6

*Davis v. Nordstrom, Inc.*,
755 F.3d 1089 (2014) .... 8, 9, 10, 11

*EEOC v. Waffle House*,
534 U.S. 279 (2002) .... 13

*Epic Sys. Corp. v. Lewis*,
584 U.S. 497 (2018)....................................................................................13, 18

*First Options of Chicago, Inc. v. Kaplan*,
514 U.S. 938 (1995)....................................................................................7, 12

*Gutierrez v. Sea World LLC*,
2014 U.S. Dist. LEXIS 139793 (S.D. Cal. Sept. 26, 2014)..................................9

*Harris v. TAP Worldwide*,
248 Cal.App.4th 373 (2016) ........................................................................8, 11

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63 (2019)........................................................................................7

*Lamps Plus, Inc. v. Varela*,
587 U.S. 176 (2019)......................................................................................13

*Moreno v. Banamex USA*,
2014 U.S. Dist. LEXIS 189783 (C.D. Cal. June 20, 2014)................................11

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983)..........................................................................................13

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) .......................................................................8

*Osorio v. Nordstrom, Inc.*,
No. 8:25-cv-02552-FWS-ADS (C.D. Cal. Feb. 2, 2026)........................10, 11, 12

*Pinnacle Museum Tower v. Pinnacle Market Dev. (US), LLC*,
55 Cal.4th 223 (2012) ....................................................................................9

*Ramirez v. Charter Commc'ns, Inc.*,
16 Cal. 5th 478 (2024) ..............................................................................15, 16

*Rent-A-Center, W., Inc. v. Jackson*,
561 U.S. 63 (2010)........................................................................................7

*Southland Corp. v. Keating*,
465 U.S. 1 (1984)..........................................................................................10

*Taft v. Henley Enters., Inc.*,
2016 U.S. Dist. LEXIS 193641 (C.D. Cal. Mar. 2, 2016)..................................10

*Thorne v. Comerica Bank*,
2023 Dist. LEXIS 92898 (C.D. Cal. May 25, 2023) .......................................... 8

*Torrecillas v. Fitness Int'l, LLC*,
52 Cal. App. 5th 485 (2020) ........................................................................ 16

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*,
363 U.S. 574 (1960) ..................................................................................... 13

*Volt Info. Sciences, Inc. v. Bd. of Trustees*,
489 U.S. 468 (1989) ..................................................................................... 17

*Walters v. Luxottica of Am. Inc.*,
2024 U.S. Dist. LEXIS 33742 (C.D. Cal. Jan. 5, 2024) .................................... 10

**Statutes**

9 U.S.C. § 2 ........................................................................................... 6, 13

Business & Professions Code section 17200, *et seq.* ........................................ 1, 5

Cal. Civ. Code § 1550 ........................................................................................ 8

Cal. Civ. Code § 1556 ........................................................................................ 8

Fair Labor Standards Act .................................................................................. 14

Federal Arbitration Act, 9 U.S.C. § 1 ............................................................ *passim*

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Heidi King ("Plaintiff") is a former employee of Defendant Nordstrom, Inc. ("Nordstrom"). On December 11, 2025, Plaintiff filed this class action against Nordstrom, asserting eight causes of action for failure to: pay overtime wages, pay for all hours worked, pay minimum wages, reimburse business expenses, timely pay wages at termination, maintain accurate records, provide accurate wage statements, maintain required payroll and employment records, reimburse business expenses, and comply with Labor Code provisions governing withholdings or deductions from wages and Business & Professions Code section 17200, *et seq.* Plaintiff's pursuit of individual and class claims in civil court is improper because she and Nordstrom are bound by an arbitration agreement governed by the Federal Arbitration Act ("FAA") in which they agreed to resolve disputes arising from their employment relationship, including the claims Plaintiff has asserted in this action, through individual arbitration only.

During her employment with Nordstrom, Plaintiff agreed to two different versions of Nordstrom's Dispute Resolution Agreement ("DRA"), on three separate occasions. Each of the DRAs contains a Class Action Waiver. The Class Action Waiver requires Plaintiff to resolve employment disputes on an individual basis and not through a class action. Nordstrom asked Plaintiff to voluntarily submit her claims to individual arbitration, but Plaintiff declined to do so. (*See* Declaration of Amy K. Todd in support of Motion to Compel Arbitration of Individual Claims and to Stay this Action ["Todd Decl."], ¶¶ 2-7, Exs. A, B.) Nordstrom therefore files this motion to compel Plaintiff to comply with the parties' arbitration agreement.

Moreover, each of the DRAs at issue contain a delegation clause that delegates to the arbitrator any disputes regarding their enforceability (except for disputes regarding the enforceability of the Class Action Waiver, which can only be determined by the Court). Consequently, any gateway disputes about the enforceability of the DRAs at issue must also be arbitrated.

Nordstrom therefore requests that the Court enforce the parties' arbitration agreement according to its terms, and: (1) compel Plaintiff to prosecute her claims for relief, if at all, through individual arbitration only, and (2) stay this action pending completion of Plaintiff's individual arbitration.

## II. STATEMENT OF RELEVANT FACTS

### A. The Parties.

Nordstrom is a nationwide specialty fashion retailer based in Seattle, Washington. Since at least 2023, Nordstrom has operated department stores and other retail locations in California, 41 other states, and the District of Columbia. (Declaration of Justin Fischbeck in support of Nordstrom's Motion to Compel Arbitration ["Fischbeck Decl."], ¶ 3.) Nordstrom has also operated distribution and fulfillment centers in multiple states, including California. (*Id*.) Nordstrom has regularly sold goods that are transported across state lines. (*Id*.)

Plaintiff began working for Nordstrom in May 2023 as a Salesperson at the Nordstrom store in Newport Beach, California. (*Id*., ¶ 6.). In August 2023, Nordstrom offered Plaintiff a new role as a Designated Selling Associate ("DSA"), which Plaintiff accepted. (*Id*.) Plaintiff remained in the DSA position until her employment with Nordstrom ended on January 7, 2025. (*Id*.)

### B. The Parties' Dispute Resolution Process.

Nordstrom maintains a Dispute Resolution Program, which includes a mutual Dispute Resolution Agreement ("DRA") between Nordstrom and its employees, to resolve employment-related disputes either internally or in arbitration, rather than in court. (*Id*., ¶ 7.) Applicants are required to agree to Nordstrom's DRA when applying for employment, and if hired, employees must sign the DRA at the inception of employment. (*Id*., ¶ 10.) Nordstrom updates its DRA from time to time, and it provides notice of those updates in multiple ways, including by emailing the updates to its employees, uploading updated DRAs to its employees' Workday accounts, and posting the updated DRA to its intranet site. (*Id*., ¶¶ 18-20 (2024 DRA).) Nordstrom advises employees that they are responsible

for reviewing documents uploaded to their Workday account and posted on mynordstrom.com, and Nordstrom requires employees to keep their personal email addresses on file with the company up to date. (*Id.*, ¶¶ 19-20, 22-23, Exs. G, H, J, K.).

**1. The Initial 2022 DRA.**

On April 28, 2023, Plaintiff applied for her position at Nordstrom online through the Nordstrom Careers website. (Fischbeck Decl., ¶ 12.) Before completing her application, Plaintiff was presented with a screen that prompted her to access and review the link to the DRA then in effect (the "2022 DRA") and "agree that I have carefully read, understand, and agree to the Dispute Resolution Agreement…" (*Id.*, ¶ 12, Ex. A.) Plaintiff was required to check, "Yes, I have read and consent to the terms and conditions" and click either "Save and Continue" or "Back" in order to move past this screen. (*Id.*, ¶ 12.) If Plaintiff had clicked on "Back" instead of "Save and Continue," she would not have been able to submit any employment application to Nordstrom. (*Id.*) Plaintiff electronically signed and submitted her application on April 28, 2023 confirming she clicked "I agree" after being prompted to accept the 2022 DRA. (*Id.*, ¶ 12, Exs. A, B.)

On April 28, 2023, Nordstrom offered Plaintiff employment as a Salesperson. The offer of employment was contingent upon Plaintiff agreeing and signing the terms of the DRA then in effect, the 2022 DRA. (*Id.*, ¶ 13, Ex. C.) Ms. King electronically signed Nordstrom's offer letter and the 2022 DRA on April 28, 2023. (*Id.*, ¶ 13, Exs. C, D.)

On August 28, 2023, Nordstrom offered Plaintiff a new role as a DSA. In connection with the offer of employment in the DSA role, Nordstrom required that Plaintiff agree to and sign the terms of the DRA then in effect, the 2022 DRA. (*Id.*, ¶ 15.) After being offered the new role, Plaintiff also agreed to the terms of the 2022 DRA by electronically signing the DRA after logging into Workday using her unique username and password on August 28, 2023. (*Id.*, ¶ 15, Ex. E.)

The 2022 DRA applies to all disputes arising from Plaintiff's employment with Nordstrom, including disputes regarding unfair competition, compensation, minimum wage, expense reimbursement, overtime, and "all other federal or state legal claims, regardless of

when the dispute arises." (*Id*., ¶¶ 13, 15, Ex. D, E.) The 2022 DRA applies "to the resolution of past, present and future Covered Disputes that otherwise would be resolved in a court of law and requires that all Covered Disputes be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial except as otherwise stated in [the 2022 DRA]." (*Id*.)

The 2022 DRA also requires that disputes be brought on an individual basis in arbitration, and it contains a Class Action Waiver:

> You and Nordstrom agree to bring any dispute in arbitration on an individual basis only, and not on a class... action basis. Accordingly, (a) There will be no right or authority for any dispute to be brought, heard or arbitrated as a class action ("Class Action Waiver").
>
> (*Id*., ¶¶ 13, 15, Exs. D, E, p. 5.)

**2. The 2024 DRA.**

In December 2023, Nordstrom updated its DRA (the "2024 DRA"). (Fischbeck Decl., ¶ 18.) The 2024 DRA states:

> Except as provided otherwise, this Agreement applies mutually to any legal disputes arising out of or related to your application for employment with Nordstrom, your employment with Nordstrom, or the termination of your employment with Nordstrom ("Covered Disputes"). This Agreement applies to any Covered Disputes that Nordstrom may have against you or you may have against [Nordstrom]. ... This Agreement is intended to apply to the resolution of past, present, and future Covered Disputes that otherwise would be resolved in a court of law and requires that all Covered Disputes be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial, except as otherwise stated in this Agreement. This means that neither party has the right to litigate Covered Disputes in court or to have a jury trial.
>
> (*Id*., ¶ 18, Ex. F, p. 3.)

/ / /

The 2024 DRA confirms that "Covered Disputes" included claims for unfair compensation, minimum wage, overtime, expense reimbursement, and "other state and local statutes or regulations addressing the same or similar subject matters, and all other federal or state legal claims…" (*Id.*)

The 2024 DRA requires that disputes be brought on an individual basis in arbitration, and it contains a Class Action Waiver. (*Id.*, p. 5.)

Nordstrom notified Plaintiff of the 2024 DRA by: sending her an email informing of her of the update, which included a link to the 2024 DRA; uploading the 2024 DRA to her Workday account; and posting the 2024 DRA to Nordstrom's intranet site. (*Id.*, ¶¶ 18-22, Exs. F, G, H, I.) Plaintiff agreed to the 2024 DRA by continuing her employment for more than five days after Nordstrom provided her with notice of the agreement. (*Id.*, ¶¶ 24-25.)

**C. Procedural History.**

On December 11, 2025, Plaintiff filed this class action against Nordstrom, asserting eight causes of action for failure to: pay minimum wages, overtime, timely pay wages during employment and at termination, provide accurate wage statements, keep payroll records, reimburse business expenses, and comply with Labor Code provisions governing withholdings or deductions from wages and Business & Professions Code section 17200, *et seq.* (*See* ECF No. 1-1.) On January 15, 2025, Nordstrom removed this action to this Court. (*See* ECF No. 1.).

**D. Nordstrom's Efforts to Meet and Confer.**

On January 26, 2026, Nordstrom's counsel spoke with Plaintiff's counsel by phone and asked Plaintiff to submit her individual claims to arbitration and dismiss her class claims. (Todd Decl., ¶ 2.) On January 27, 2026, Nordstrom's counsel provided Plaintiff's counsel with copies of Plaintiff's 2022 DRA, signed on two separate occasions, and the 2024 DRA she accepted through her continued employment with Nordstrom. (*Id.*, ¶ 3, Ex. A.) Nordstrom's counsel requested that Plaintiff stipulate to arbitration and dismissal of her class claims. (*Id.*, ¶¶ 2, 3, Ex. A.) Nordstrom's counsel met and conferred with Plaintiff's counsel again by video conference on February 2, 2026 regarding these same issues. (*Id.*, ¶¶

5-6.) Counsel for Plaintiff declined to stipulate to arbitration. (*Id*.) Nordstrom's counsel advised Plaintiff's counsel that Nordstrom would proceed with filing its motion to compel arbitration. (*Id*., ¶ 7.)

## III. ARGUMENT

### A. The 2024 DRA Is Governed By The Federal Arbitration Act.

The FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA establishes an overarching policy favoring arbitration agreements. *AT & T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011); *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) ("Section 2 of the FAA creates a policy favoring enforcement of agreements to arbitrate.")

The FAA applies to agreements "evidencing a transaction involving commerce." 9 U.S.C. § 2. The term "involving commerce" is interpreted broadly so that the FAA governs any arbitration agreement that affects commerce in any way. *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 55-56 (2003); *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111-21 (2001) (reversing decision that declined to extend the FAA to arbitration agreement between a local store manager and a nationwide retailer); *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 277 (1995) (the phrase "involving commerce" is the functional equivalent of transactions that merely "affect" commerce).

Here, the 2024 DRA expressly states that it is governed by the FAA: "This Dispute Resolution Agreement ('Agreement') is governed by the Federal Arbitration Act, 9 U.S.C. § 1, et seq…" (Fischbeck Decl., ¶ 18, Ex. F, p. 2 (2024 DRA).) This statement is sufficient to bring the 2024 DRA within the purview of the FAA. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 442-43 (2006) (where arbitration agreement expressly provided that the FAA governed, the FAA preempts application of state law).

Additionally, throughout the period of Plaintiff's employment, Nordstrom's business has regularly and consistently involved commerce. Since at least 2023, Nordstrom has operated department stores and other retail locations in California, 41 other states, and

the District of Columbia. (Fischbeck Decl., ¶ 3.) Nordstrom has also operated distribution and fulfillment centers in multiple states, including California. Nordstrom has regularly sold goods that are transported across state lines. (*Id.*) Therefore, because the parties' arbitration agreement "evidences a transaction involving commerce," it is governed by the FAA.

**B. The Parties Delegated Gateway Issues to The Arbitrator.**

Under the FAA, "arbitration is a matter of contract, and courts must enforce arbitration contracts according to their terms." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67 (2019) (citation omitted). Accordingly, "parties may agree to have an arbitrator decide not only the merits of a particular dispute but also gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Id.* at 67-68 (quoting *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010) (internal quotations omitted)). To answer the question of who decides arbitrability, courts first "determine[] whether a valid arbitration agreement exists." *Id.* at 69 (citing 9 U.S.C. § 2). "[I]f a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Id.*

Here, Nordstrom moves to compel arbitration pursuant to the 2024 DRA (or alternatively, pursuant to the 2022 DRA). The 2024 DRA contains a clear and unmistakable delegation clause, as does the 2022 DRA. (Fischbeck Decl., ¶¶ 13, 18, Exs. D, E, pp. 2-3, Ex. F, p. 2.) Because Nordstrom's DRAs contain a delegation clause, the Court's only role is to "determine[] whether a valid arbitration agreement exists" and whether "the agreement delegates the arbitrability issue to an arbitrator[.]" *Henry Schein, Inc.*, 586 U.S. at 69 (citing 9 U.S.C. § 2)

**1. The parties entered into a valid agreement.**

Whether the parties agreed to arbitrate a dispute is governed by ordinary contract principles. *Rent-A-Center*, 561 U.S. at 69; *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Under California law, a valid contract exists when: (1) the parties are capable of contracting; (2) there was mutual consent; (3) the contract had a lawful object; and (4) the

contract was supported by sufficient cause or consideration. Cal. Civ. Code § 1550. Here, the 2024 DRA meets these requirements (as does the 2022 DRA).

First, all parties were capable of contracting. *See* Cal. Civ. Code § 1556 ("All persons are capable of contracting, except minors, persons of unsound mind, and persons deprived of civil rights."). Plaintiff was the age of majority when she twice signed the 2022 DRA and when she accepted the 2024 DRA. (Fischbeck Decl., ¶ 16.) Nordstrom is unaware of evidence that Plaintiff was incompetent at any time during her employment.

Second, there is mutual consent. A party's acceptance of an arbitration agreement (as with any contract) may be express (*i.e.*, signed) or implied in fact. *Harris v. TAP Worldwide*, 248 Cal.App.4th 373, 383 (2016). Here, Plaintiff evidenced her acceptance of the 2024 DRA by continuing her employment with Nordstrom after receiving the 2024 DRA. (Fischbeck Decl., ¶¶ 18, 24, 25, Ex. F at p. 7.) Through its Code of Conduct, Nordstrom advised employees that they were responsible for reviewing documents uploaded to their Workday account and posted at mynordstrom.com. (*Id.*, ¶ 23, Exs. J, K.) Nordstrom provided Plaintiff with notice of the 2024 DRA by: advising her that an updated DRA would be uploaded to her Workday account and posted to mynordstrom.com in January 2024; sending her an email about the 2024 DRA on December 21, 2023, which included a link to the 2024 DRA; uploading the 2024 DRA to her Workday account on December 21, 2023; posting a message on her Workday landing page confirming that her continued employment would constitute acceptance of the 2024 DRA; and posting the 2024 DRA to Nordstrom's intranet site. (*Id.*, ¶¶ 18-25, Exs. F-L; *see, e.g.*, *Davis v. Nordstrom, Inc.*, 755 F.3d 1089, 1094 (2014) (affirming that the employee assented to a revised arbitration agreement after Nordstrom "satisfied the minimal requirements under California law for providing employees with reasonable notice" by sending employees letters about the updated arbitration agreement); *Thorne v. Comerica Bank*, 2023 Dist. LEXIS 92898, *7-8 (C.D. Cal. May 25, 2023) ("Where an arbitration agreement does not require the employee to sign or acknowledge the agreement for it to be binding, courts have found assent where the employer provided inquiry or constructive notice."); *see also Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014)

(arbitration is enforceable where the employer puts "a reasonably prudent [employee] on inquiry notice of the terms of the contract.").)

The 2024 DRA expressly states that continuing employment for five days following receipt of the agreement constitutes acceptance of the agreement. (*Id.*, ¶ 18, Ex. F, p. 7.) By continuing her employment until January 7, 2025, more than five days following receipt of the agreement, Plaintiff accepted the terms of the 2024 DRA. (*Id.*, ¶ 25; *see, e.g.*, *Davis v. Nordstrom, Inc.*, 755 F.3d 1089, 1093 (2014) (explaining that "[w]here an employee continues in his or her employment after being given notice of the changed terms or conditions, he or she has accepted those new terms or conditions" and reversing order denying motion to compel arbitration); *Gutierrez v. Sea World LLC*, No. 14-CV-0131-BTM-JMA, 2014 U.S. Dist. LEXIS 139793, at *7-8 (S.D. Cal. Sept. 26, 2014) ("Plaintiff ... received a letter ... which informed him of the revised DRP policy. Plaintiff remained employed by Defendant for almost three years thereafter, without objection, indicating assent to the DRP."); *Pinnacle Museum Tower v. Pinnacle Market Dev. (US), LLC*, 55 Cal.4th 223, 236 (2012) ("employee's continued employment constitutes acceptance of an arbitration agreement proposed by the employer") (citation omitted)); *Baghdasarian v. Macy's Inc.*, No. 24-3438, 2025 U.S. App. LEXIS 7838, at *3 (9th Cir. Apr. 3, 2025) (holding that plaintiff consented to arbitration agreement based on her continued employment and failure to submit opt-out form after being provided materials about the arbitration agreement and her opt-out option during mandatory meetings and through two separate mailings).)

Here, Plaintiff agreed to the 2024 DRA by continuing her employment for more than five days after Nordstrom provided notice to her of the DRA by emailing her a notice of and link to the 2024 DRA, uploading a copy of the 2024 DRA to Plaintiff's Workday account, and posting the 2024 DRA to its intranet site, mynordstrom.com. Fischbeck Decl., ¶¶ 18-25, Exs. F-L (2024 DRA); *see Davis*, 755 F.3d at 1093; *Gutierrez*, 2014 U.S. Dist. LEXIS 139793 at *7-8; *Pinnacle Museum Tower*, 55 Cal.4th at 236; *Baghdasarian*, 2025 U.S. App. LEXIS 7838, at *3.

/ / /

Plaintiff agreed to the 2022 DRA by electronically signing it on two occasions – once when she accepted employment with Nordstrom in April 2023 and then again when she was promoted to a new role in August 2023. (Fischbeck Decl., ¶¶ 10-15, Exs. A-E; *see Taft v. Henley Enters., Inc.*, No. 8:15-cv-1658-JLS-JCG, 2016 U.S. Dist. LEXIS 193641, *8-9 (C.D. Cal. Mar. 2, 2016) (holding that employer satisfied burden to authenticate plaintiff's electronic signature on arbitration agreement based on declaration explaining steps in its onboarding process and providing audit trail showing steps plaintiff took to sign); *Walters v. Luxottica of Am. Inc.*, No. 8:23-cv-01099-FWS-MAA, 2024 U.S. Dist. LEXIS 33742, *14-15 (C.D. Cal. Jan. 5, 2024) (holding that audit trail from employer's onboarding platform was sufficient to show that plaintiff electronically signed arbitration agreement).)

Third, the 2024 DRA has a lawful objective, that is, the resolution of disputes through binding arbitration. *See Buckeye Check Cashing*, 546 U.S. at 443 (stating the FAA "embodies the national policy favoring arbitration"); *Davis*, 755 F.3d at 1092 (recognizing "a 'liberal federal policy' in favor of arbitration") (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011)); *Southland Corp. v. Keating*, 465 U.S. 1, 10-11 (1984) (holding that, by enacting the FAA, Congress "declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims that the contracting parties agreed to resolve by arbitration."); *see also Osorio v. Nordstrom, Inc.*, No. 8:25-cv-02552-FWS-ADS (C.D. Cal. Feb. 2, 2026) ("The court finds that the 2025 DRA has the lawful objective of resolving disputes through binding arbitration."). The 2022 DRA has the same lawful objective.

Fourth, the 2024 DRA is supported by sufficient consideration. The California Supreme Court has explained it is a "general principle that the law will not concern itself with the adequacy of consideration." *Asmus v. Pac. Bell*, 23 Cal.4th 1, 15 (2000). Here, the mutual promises and advantages of arbitration, rather than litigating in court, constitute sufficient consideration for the 2024 DRA, as well as for the 2022 DRA. *See Circuit City Stores*, 532 U.S. at 123 ("Arbitration agreements allow parties to avoid the costs of litigation, a benefit

that may be of particular importance in employment litigation, which often involves smaller sums of money than disputes concerning commercial contracts."). The 2024 DRA is mutually binding, creating benefits and obligations on both parties. (Fischbeck Decl., ¶ 18, Ex. F, p. 2 ["[T]his agreement applies mutually to any legal dispute arising out of or related to your application for employment with Nordstrom, your employment with Nordstrom, or the termination of your employment with Nordstrom ("Covered Disputes"). This Agreement applies to any Covered Disputes that Nordstrom and its related entities (defined below) may have against you or you may have against [Nordstrom and its related entities]."].) The 2022 DRA contains the same language. (*Id.*, ¶¶ 13, 15, Exs. D, E.) The 2024 and 2022 DRAs also mutually require the parties to arbitrate claims they may have against each other. (*Id.*, ¶¶ 13, 15, 18, Ex. F, p. 2 (2024 DRA); Exs. D, E, p. 2 (2022 DRA).)

Moreover, Plaintiff's continued employment constitutes consideration for the arbitration agreement. *See, e.g.*, *Moreno v. Banamex USA*, 2014 U.S. Dist. LEXIS 189783, *7 (C.D. Cal. June 20, 2014) ("Continued employment is valid consideration that can support an arbitration agreement."); *Harris*, 248 Cal. App. 4th at 381 (finding that employee accepted an arbitration agreement contained in an employee handbook as a condition of employment); *Davis*, 755 F.3d at 1093 (holding that when Nordstrom mailed notice to revisions to its DRA to its employees, and, "an employee continue[d] in his or her employment after being given notice of the changed terms or conditions, he or she has accepted those new terms or conditions."); *see also Osorio v. Nordstrom, Inc.*, No. 8:25-cv-02552-FWS-ADS (C.D. Cal. Feb. 2, 2026) ("The court finds that sufficient consideration was offered for the 2025 DRA because Plaintiff's continued employment constitutes consideration for the 2025 DRA and arbitration agreements 'allow parties to avoid the costs of litigation, a benefit that may be of particular importance in employment litigation, which often involves smaller sums of money than disputes concerning commercial contracts.'") (citations omitted).

/ / /

/ / /

**2. The DRAs contain a delegation clause.**

"[G]ateway issues can be expressly delegated to the arbitrator where 'the parties *clearly and unmistakably*'" agree to have the arbitrator resolve such issues. *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (quoting *AT&T Tech., Inc. v. Comm. Workers*, 475 U.S. 643, 649 (1986) (emphasis in original)); *see also First Options*, 514 U.S. at 943 ("[T]he question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about *that* matter." (emphasis in original)).

The 2024 DRA contains a clear and unmistakable delegation clause: "[D]isputes relating to the validity, applicability, enforceability, unconscionability or waiver of this Agreement, including but not limited to any claim that all or any part of this Agreement is void or voidable, are Covered Disputes and shall be decided by the arbitrator." (Fischbeck Decl., ¶ 18, Ex. F, p. 2.) The 2022 DRA contains the same delegation clause as the 2024 DRA. (*Id.*, ¶ 13, 15, Exs. D, E, pp. 2-3 (2022 DRA.)[1]

The Central District has recently upheld the identical delegation language, as the delegation provision is the same in both Nordstrom's 2025 DRA and 2024 DRA. In *Osorio v. Nordstrom*, the Court "further [found] that disputes regarding the arbitrability of Plaintiff's claims should be decided by an arbitrator pursuant to the 2025 DRA's delegation clause." *See Osorio v. Nordstrom, Inc.*, No. 8:25-cv-02552-FWS-ADS (C.D. Cal. Feb. 2, 2026). Accordingly, any disputes concerning the arbitrability of Plaintiff's claims must be decided by the arbitrator. Therefore, Nordstrom asks that the Court conclude that the parties have a valid arbitration agreement and order Plaintiff to submit her claims to individual arbitration.

/ / /

/ / /

[1] All of the DRAs Plaintiff signed and accepted provide that "any claim that all or part of the Class Action Waiver ... and/or Representative Action Waiver including, but not limited to any claim that all or part of the Class Action Waiver ... and/or Representative Action Waiver is invalid, unenforceable, unconscionable, void or voidable, may be determined only by a court of competent jurisdiction and not by an arbitrator." (Fischbeck Decl., ¶¶ 13, 18, Ex. F, p. 5; (2024 DRA); Exs. D, E, p. 6 (2022 DRA).)

### C. The Parties' DRAs Are Enforceable.

If the Court declines to enforce the parties' delegation clause for any reason, Nordstrom alternatively asks the Court to enforce the 2024 DRA (or if necessary, the 2022 DRA).

The FAA declares a liberal policy favoring the enforcement of arbitration agreements, stating that arbitration agreements involving commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract[.]" 9 U.S.C. § 2; *see also Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 546 (2018); *Concepcion*, 563 U.S. at 339. This provision "reflect[s] both a liberal federal policy favoring arbitration ... and the fundamental principle that arbitration is a matter of contract[.]" *Concepcion*, 563 U.S. at 333 (internal citations and quotations omitted). "The [FAA] requires courts to enforce covered arbitration agreements according to their terms." *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 178 (2019) (citing 9 U.S.C. § 2); *see also Am. Express Co. v. Italian Colors Restaurant*, 570 U.S. 228, 233 (2013). "Arbitration is a matter of contract, and the [FAA] requires courts to honor parties' expectations." *Concepcion*, 563 U.S. at 351. It is the intent of Congress "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983).

#### 1. The DRAs cover Plaintiff's claims.

"Absent some ambiguity in the agreement ... it is the language of the contract that defines the scope of disputes subject to arbitration." *EEOC v. Waffle House*, 534 U.S. 279, 289 (2002). Plaintiff must demonstrate there is no permissible interpretation of the 2024 DRA (or the 2022 DRA) that would cover this action. *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960) (courts must defer to arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute ...[;] [d]oubts should be resolved in favor of coverage."); *Lamps Plus*, 587 U.S. at 189 ("[A]mbiguities about the scope of an arbitration agreement must be resolved in favor of arbitration.").

Here, the 2024 DRA applies to "Covered Disputes" which are defined as "any legal disputes arising out of or related to [Plaintiff's] application for employment with Nordstrom, [Plaintiff's] employment with Nordstrom, or the termination of [Plaintiff's] employment with Nordstrom[.]" (Fischbeck Decl., ¶ 18, Ex. F, p. 2.) The 2024 DRA also defines "Covered Disputes" to include "claims arising under ... the Fair Labor Standards Act, ... other state and local statutes or regulations addressing the same or similar subject matters, and all other federal or state legal claim[.]" (*Id.*) It specifically references claims related to unfair competition, compensation, minimum wage, overtime, and expense reimbursement. The 2022 DRAs define "Covered Disputes" the same way. (*Id.*, ¶¶ 13, 15, 18, Ex. F, p. 2 (2024 DRA), Exs. D, E, p. 2 (2022 DRA).)

Plaintiff alleges that Nordstrom failed to pay her all minimum and overtime wages she earned, unlawfully deducted amounts from her wages, failed to reimburse her business expenses, and engaged in unfair competition. (*See* ECF No. 1-1 at ¶¶ 3-5.) Each of the claims asserted by Plaintiff in this action arises from her former employment with Nordstrom and involves an alleged violation of California labor law statutes. Therefore, Plaintiff's claims are covered by the 2024 DRA (as well as the 2022 DRA).

**2. The DRAs satisfy the *Armendariz* factors.**

Because *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal.4th 83 (2000), imposes requirements for arbitration agreements that are not applicable to all contracts, it is preempted by the FAA. *See Concepcion*, 563 U.S. at 343. Even assuming it is not preempted, the DRAs fully comply with the *Armendariz* requirements.

<u>Limitation of Remedies</u>: Arbitration agreements must provide for adequate remedies through arbitration. *Armendariz*, 24 Cal.4th at 103-04. The 2024 DRA does not contain any language limiting remedies but rather affirms Plaintiff may seek the same substantive relief as she could in a court of law. (Fischbeck Decl., ¶ 18, Ex. F, p. 5 ["The arbitrator may award you or Nordstrom any remedy to which you or Nordstrom would be entitled under applicable law, but such remedies shall be limited to those that would be available to you or Nordstrom in your/its individual capacity in a court of law for the claims presented to and

decided by the arbitrator."]; *see also* ¶¶ 13, 15, Exs. D, E, p. 7 (2022 DRA).)

Adequate Discovery: Arbitration agreements must provide for adequate discovery in arbitration. *Armendariz,* 24 Cal.4th at 104-06; *Ramirez v. Charter Commc'ns, Inc.*, 16 Cal. 5th 478, 506 (2024) (holding that "[a]llowing the arbitrator to deviate from agreed-upon default discovery limits ensures that neither party will be unfairly hampered in pursuing a statutory claim based on circumstances that arise post-formation" and "giving the arbitrator authority to expand discovery based on *Armendariz*'s requirement is one way the adequacy concern can be addressed"). The 2022 and 2024 DRAs both provide for adequate discovery:

> In arbitration, you and Nordstrom will have the right to conduct civil discovery, subject to the limitations described below .... Each party may take the deposition of two individual fact witnesses and any expert witness designated by another party. Each party also may propound twenty-five (25) requests for production of documents and five (5) interrogatory requests to the other party. Each party shall also have the right to subpoena witnesses and documents for discovery or the arbitration hearing, including testimony and documents relevant to the case from third parties, in accordance with any applicable state or federal law. The parties may mutually agree to additional discovery. In addition, the arbitrator will have exclusive authority to entertain requests for additional discovery, and to grant or deny such requests, based on the arbitrator's determination whether additional discovery is appropriate under the circumstances of the case.

(Fischbeck Decl., ¶ 18, Ex. F, p. 4; *see also* ¶¶ 13, 15, Exs. D, E, p. 5 (2022 DRA).)

Written Award: Arbitration agreements must provide for a written award. *Armendariz*, 24 Cal.4th at 106-07. The 2022 and 2024 DRAs each state, "The arbitrator will issue a decision or award in writing, stating the essential findings of fact and conclusions of law." (*Id*., ¶ 18, Ex. F, p. 5.; *see also* ¶¶ 13, 15, Exs. D, E at p. 7 (2022 DRA).)

/ / /

Costs of Arbitration: Arbitration agreements may not shift the cost of arbitration to the employee. *Armendariz*, 24 Cal.4th at 110-11. The 2024 DRA states, "Nordstrom will be responsible for arbitration fees and administrative costs in excess of the amount of administrative fees and costs that you otherwise would have been required to pay if the claims were litigated in court. If the arbitrator finds in your favor, Nordstrom will reimburse your portion of the filing fee." (Fischbeck Decl., ¶ 18, Ex. F at p. 5.) The 2022 DRA includes the identical language. (*Id.*, ¶¶ 13, 15 Exs. D, E at p. 6 (2022 DRA).)

Neutral Arbitrator: Arbitration agreements must provide for neutral arbitrators. *Armendariz*, 24 Cal.4th at 104. The 2022 and 2024 DRAs each provide for a neutral arbitrator, stating that:

> The arbitrator shall be selected by mutual agreement of the parties ...If the parties cannot agree on an arbitrator, either you or Nordstrom may apply to a court of competent jurisdiction with authority over the location where the arbitration will be conducted for appointment of a neutral arbitrator ...The arbitrator must be impartial and independent and shall make disclosures to the parties in accordance with applicable law, including disclosure of any circumstance likely to give rise to justifiable doubt as to the arbitrator's impartiality or independence...

(Fischbeck Decl., ¶ 18, Ex. F at p. 3.; *see also* ¶¶ 13, 15, Exs. D, E at pp. 3-4 (2022 DRA).)

Bilaterality: Arbitration agreements must be bilateral. *Armendariz*, 24 Cal.4th at 117; *see also Torrecillas v. Fitness Int'l, LLC*, 52 Cal. App. 5th 485, 499 (2020), *disapproved of on other grounds by Ramirez*, 16 Cal. 5th 478 (agreement requiring arbitration of "all disputes" between the parties demonstrated mutuality). The 2024 DRA is bilateral: "This Agreement applies to any Covered Disputes that Nordstrom may have against you or that you may have against [Nordstrom]." (Fischbeck Decl., ¶ 18, Ex. F at p. 2 (2024 DRA). The 2022 DRA includes the identical language. (*Id.*, ¶¶ 13, 15, Exs. D, E at p. 2.) Thus, each version of the DRA satisfies the *Armendariz* factors and is enforceable.

/ / /

/ / /

### D. Plaintiff's Claims Must Be Arbitrated on An Individual Basis.

Section 4 of the FAA provides that a party may obtain an order compelling arbitration "in the manner provided for in [the parties'] agreement." 9 U.S.C. § 4. The "primary purpose" of the FAA is "ensuring that private agreements to arbitrate are enforced according to their terms." *Volt Info. Sciences, Inc. v. Bd. of Trustees*, 489 U.S. 468, 479 (1989); *see also Italian Colors*, 570 U.S. at 233 ("[C]onsistent with [the FAA's] text, courts must rigorously enforce arbitration agreements according to their terms, ... including terms that specify with whom the parties choose to arbitrate their disputes ... and the rules under which that arbitration will be conducted.") (internal citations and quotations omitted). "[C]ourts must place arbitration agreements on an equal footing with other contracts" and "enforce them according to their terms." *Concepcion*, 563 U.S. at 339 (citations omitted).

The parties agreed that a court should decide the enforceability of the Class Action Waiver. (Fischbeck Decl., ¶ 18, Ex. F at p. 3 (2024 DRA); ¶¶ 13, 15, Exs. D, E at p. 2 (2022 DRA).) Nordstrom therefore asks the Court to order Plaintiff to submit her individual claims to arbitration pursuant to the terms of the 2024 DRA (or alternatively, pursuant to the terms of the 2022 DRA).

#### 1. The Class Action Waiver is valid and enforceable.

The 2024 DRA prohibits Plaintiff from pursuing class claims: **"There will be no right or authority for any dispute to be brought, heard or arbitrated as a class action, and the arbitrator will have no authority to hear or preside over any such claim ('Class Action Waiver')."** (Fischbeck Decl., ¶ 18, Ex. F at p. 4 [emphasis in original].) The 2022 DRA contains the identical provision. (*Id.*, ¶¶ 13, 15, Exs. D, E at p. 5-6 (2022 DRA).)

In *Concepcion*, the Supreme Court validated arbitral class waivers in FAA-governed arbitration agreements and reaffirmed the bedrock principle of federal arbitration law — that arbitration agreements are to be enforced as written. *See Concepcion*, 563 U.S. at 350-51 (holding the FAA preempted the California Supreme Court's rule restricting enforcement of class action waivers). In reaching its decision, the Supreme Court discussed, at length, how class arbitration was inconsistent with the fundamental attributes of arbitration contemplated

by the FAA and concluded that California's prohibition on class action waivers was preempted because it created a scheme inconsistent with the FAA. *Id.* at 348-52.

The Supreme Court has confirmed that by enacting the FAA, "Congress ... instructed federal courts to enforce arbitration agreements according to their terms— including terms providing for individualized proceedings." *Epic Sys. Corp.*, 584 U.S. at 502.

Therefore, the Court must order Plaintiff to submit her individual claims to arbitration and stay this litigation pending completion of that arbitration.

## IV. CONCLUSION

Based on the foregoing, Nordstrom requests that this Court enforce the parties' arbitration agreement according to its terms, and therefore: (1) compel Plaintiff to prosecute her claims for relief, if at all, through individual arbitration only and (2) stay this litigation pending completion of the individual arbitration.

DATED: February 20, 2026

JACKSON LEWIS P.C.

By: /s/ *Amy K. Todd*
AMY K. TODD
KELLI M. DREGER
MARIELA R. ROMO

Attorneys for Defendant
NORDSTROM, INC.

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendant Nordstrom, Inc. certifies that this brief contains 6,985 words, which complies with the word limit of L.R. 11-6.1.

DATED: February 20, 2026

JACKSON LEWIS P.C.

By: /s/ *Amy K. Todd*
AMY K. TODD
KELLI M. DREGER
MARIELA R. ROMO

Attorneys for Defendant
NORDSTROM, INC.