Joshua I. White (SBN 278166)
William M. Hogg (SBN 338196)
LAUREL EMPLOYMENT LAW
808 Wilshire Boulevard, Suite 200
Santa Monica, California 90401
Tel: (323) 551-9221
josh@laurelemploymentlaw.com
william@laurelemploymentlaw.com

*Counsel for King & the Commissioned Employees*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

HEIDI KING, Individually and for Others Similarly Situated,

Plaintiff,

vs.

NORDSTROM, INC.,

Defendant.

**Case No. 8:26-cv-00121-MRA (KESx)**

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION (ECF No. 15)**

| | |
|---|---|
| Date: | Apr. 21, 2026 |
| Time: | 10:00 A.M. |
| Courtroom: | 9B |
| Action Filed: | Dec. 11, 2025 |
| Removal Date: | Jan. 15, 2026 |
| Trial Date: | TBD |

## TABLE OF CONTENTS


1. Introduction. ........................................................................ 1
2. Relevant Facts. ........................................................................ 2
3. Legal Standard. ........................................................................ 4
4. Argument & Authorities. ........................................................................ 7
   A. Nordstrom failed to prove King signed the 2022 DRA. ............................ 7
      i. A trio of cases confirm Nordstrom's showing is inadequate. .......... 8
      ii. Nordstrom failed to show it sent King the DocuSign request. ...... 12
   B. Nordstrom's 2024 DRA lacks mutual assent. ...................................... 14
   C. Nordstrom fails to show King waived her constitutional rights. ............. 18
5. Conclusion. ........................................................................ 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**


*Aetna Ins. Co. v. Kennedy to Use of Bogash*,
301 U.S. 389 (1937) .......... 19

*AT & T Techs. Inc. v. Commc'ns Workers of Am.*,
475 U.S. 643 (1986) .......... 6

*Bakrac, Inc. v. Villager Franchise Sys., Inc.*,
164 F. App'x 820 (11th Cir. 2006) .......... 20

*Bannister v. Marinidence Opco, LLC*,
64 Cal. App. 5th 541 (Cal. Ct. App. 2021) .......... 9, 10, 14

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) .......... 14

*Brady v. United States*,
397 U.S. 742 (1970) .......... 19, 20

*Breham v. Asset Acceptance, LLC*,
No. CV-09-1474-PHX-GMS, 2010 WL 1735147 (D. Ariz. Apr. 28, 2010) .......... 21

*Cannon v. Wells Fargo Bank N.A.*,
917 F. Supp. 2d 1025 (N.D. Cal. 2013) .......... 19, 21, 22

*Century 21 Real Estate LLC v. All Prof'l Realty, Inc.*,
No. Civ. 2:10-2751 WBS GGH, 2012 WL 2682761 (E.D. Cal. July 6, 2012) .......... 22

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2020) .......... 5

*Com. Factors Corp. v. Kurtzman Bros.*,
131 Cal. App. 2d 133 (Cal. Ct. App. 1955) .......... 18

*Commodity Futures Trading Com'n v. Schor*,
478 U.S. 833 (1986) .......... 18

*Concat LP v. Unilever, PLC*,
350 F. Supp. 2d 796 (N.D. Cal. 2004) .......... 4, 5, 7

*Cox v. Ocean View Hotel Corp.*,
533 F.3d 1114 (9th Cir. 2008) .......... 4

*Cross v. Nat'l Union Fire Ins. Co.*,
No. 2:19-cv-00787-KJM-DB, 2019 WL 6496838 (E.D. Cal. Dec. 3, 2019) .......... 5, 7

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985) .......... 21

*Diaz v. Sohnen Enterprises*,
34 Cal. App. 5th 126 (Cal. Ct. App. 2019) .......... 16

*Dreiling v. Peugeot Motors of Am., Inc.*,
539 F. Supp. 402 (D. Colo. 1982) .......... 23

*Eiess v. USAA Fed. Sav. Bank*,
404 F. Supp. 3d 1240 (N.D. Cal. 2019) .......... 7

*Espejo v. Southern California Permanente Med. Grp.*,
246 Cal. App. 4th 1047 (Cal. Ct. App. 2016) .......... 7

*Fabian v. Renovate Am., Inc.*,
42 Cal. App. 5th 1062 (Cal. Ct. App. 2019) .......... 8, 9

*First Options of Chi., Inc. v. Kaplan*,
514 U.S. 938 (1995) .......... 6, 7

*First Union Nat'l Bank v. United States*,
164 F. Supp. 2d 660 (E.D. Pa. 2001) .......... 22

*Granite Rock Co. v. International Bhd. of Teamsters*,
561 U.S. 287 (2010) .......... 5

*Greystone Nevada, LLC v. Anthem Highlands Cmty. Ass'n*,
549 F. App'x 621 (9th Cir. 2013) .......... 5

*Hergenreder v. Bickford Senior Living Corp.*,
656 F.3d 411 (6th Cir. 2011) .......... 20

*Hodges v. Easton*,
106 U.S. 408 (1882) .......... 19

*Howsam v. Dean Witter Reynolds, Inc.*,
537 U.S. 79 (2002) .......... 6

*In re Cty. of Orange*,
784 F.3d 520 (9th Cir. 2015) .......... 19

*Johnson v. Walmart Inc.*,
57 F.4th 677 (9th Cir. 2023) .......... 5

*Johnson v. Zerbst*,
304 U.S. 458 (1938) .......... 19

*Knutson v. Sirius XM Radio Inc.*,
771 F.3d 559 (9th Cir. 2014) .......... 6

*Kum Tat Ltd. v. Linden Ox Pasture, LLC*,
845 F.3d 979 (9th Cir. 2017) .......... 6

*Leasing Serv. Corp. v. Crane*,
804 F.2d 828 (4th Cir. 1986) .......... 20, 22

*McCarthy v. Xerox Corp.*,
No. 8:25-cv-01976 ADS, 2026 WL 413631 (C.D. Cal. Feb. 3, 2026) .......... 16

*Merrill Lynch & Co. v. Allegheny Energy, Inc.*,
500 F.3d. 171 (2d Cir. 2007) .......... 19

*Miller v. Sun Capital Partners, Inc.*,
No. 13-1996-RGA, 2016 WL 4941989 (D. Del. Sept. 15, 2016) .......... 21

*Monster Energy Co. v. Schechter*,
7 Cal.5th 781 (Cal. 2019) .......... 7

*Morrison v. Circuit City Stores, Inc.*,
317 F.3d 646 (6th Cir. 2003) .......... 19

*MZ Ventures, LLC v. Mitsubishi Motor Sales of Am., Inc.*,
No. CV9902395 DDP-AIJx, 1999 WL 33597219 (C.D. Cal. Aug. 31, 1999) .......... 23

*Nat'l Equip. Rental Ltd. v. Hendrix*,
565 F.2d 255 (2d Cir. 1977) .......... 19, 21

*Nat'l Equip. Rental, Ltd. v. Szukhent*,
375 U.S. 311 (1964) .......... 23

*Newton v. Am. Debt Servs.*,
854 F. Supp. 2d 712 (N.D. Cal. 2012) .......... 3

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) .......... 15, 16

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023) .......... 14

*Palmer v. Valdez*,
560 F.3d 965 (9th Cir. 2009) .......... 20

*Parris v. Wyndham Vacation Resorts, Inc.*,
No. 11-00258 SOM-BMK, 2013 WL 1296231 (D. Haw. Mar. 28, 2013) .......... 21

*Phoenix Leasing Inc. v. Sure Broadcasting, Inc.*,
843 F. Supp. 1379 (D. Nev. 1984) .......... 21

*Price v. Cushman & Wakefield, Inc.*,
808 F. Supp. 2d 670 (S.D.N.Y. 2011) .......... 21

*Reichert v. Rapid Invs., Inc.*,
56 F.4th 1220 (9th Cir. 2022) .......... 6

*Rent-A-Ctr., W., Inc. v. Jackson*,
561 U.S. 63 (2010) .......... 6

*Revitch v. DIRECTV, LLC*,
977 F.3d 713 (9th Cir. 2020) .......... 5

*Ruiz v. Moss Bros. Auto Group*,
232 Cal. App. 4th 836 (Cal. Ct. App. 2014) .......... 11, 14

*Sellers v. JustAnswer LLC*,
73 Cal. App. 5th 444 (Cal. Ct. App. 2021) .......... 15

*Slocum v. New York Life Ins. Co.*,
228 U.S. 364 (1913) .......... 19

*Smith v. Bank of Hawaii*,
No. 16-00513 JMS-RLP, 2018 WL 1662107 (D. Haw. Apr. 5, 2018) ................ 22

*St. Agnes Medical Ctr. v. PacifiCare of Cal.*,
31 Cal. 4th 1187 (Cal. 2003)........................................................................7

*Suski v. Coinbase, Inc.*,
55 F.4th 1227 (9th Cir. 2022) ....................................................................... 6

*Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*,
925 F.2d 1136 (9th Cir. 1991)......................................................................5

*Tracinda Corp. v. DaimlerChrysler AG*,
502 F.3d 212 (3d Cir. 2007) ...................................................................... 20

*United States v. Bennett*,
363 F.3d 947 (9th Cir. 2004) ......................................................................12

*Windsor Mills, Inc. v. Collins & Aikman Corp.*,
25 Cal. App. 3d 987 (Cal. Ct. App. 1972).................................................18

**Statutes**

Cal. Civ. Code § 1633.9 ..................................................................................... 8

**Treatises**

Restatement (Second) of Contracts (1981)...............................................14, 20

**Constitutional Provisions**

U.S. CONST. amend. VII ...................................................................................18

## 1. Introduction.

Nordstrom, Inc. (Nordstrom) failed to prove with summary judgment-level evidence that Heidi King (King) agreed to arbitrate her claims. Nordstrom suggests that because someone typed the name "Heidi King" into DocuSign, King can be deprived of her Constitutional right to a jury trial. And Nordstrom suggests that because it sent a company-wide email titled "Happy Holidays," without verifying King saw or agreed to the terms, that King is bound by a document she never saw or knew existed. That's incorrect. Nordstrom must prove **King**, to the exclusion of all others, executed the agreement. And Nordstrom must prove it put King on adequate inquiry notice that her rights would be altered by continuing her employment. Nordstrom has failed to meet its burden.

Moreover, Nordstrom failed to meet its burden to show King knowingly, voluntarily, and intelligently waived her Seventh Amendment right to a jury trial. Quite the opposite: Nordstrom maintains its employees are **forced** to sign away their Seventh Amendment rights as a condition of employment. Forcing people to sign away their rights necessarily means the waiver is not voluntary, let alone knowing and intelligent. Nordstrom fails to meet this heightened constitutional waiver standard.

Because Nordstrom failed to prove King signed or agreed to the arbitration agreement, and/or because Nordstrom failed to prove King knowingly and intentionally waived her constitutional rights, the Court should deny Nordstrom's Motion.

**2. Relevant Facts.**

King worked for Nordstrom from approximately May 2023 to January 2025 as a salesperson and DSA (a liaison between Nordstrom and its supplier) in Orange County, California. *See* ECF No. 1-1 at 4, ¶ 6. Nordstrom claims King agreed to two versions of an arbitration agreement (the "DSA"): a 2022 version and a 2024 version *See* ECF No. 15-1 at 6.

Nordstrom says King first agreed to the 2022 DSA on April 28, 2023 online by electronically signing the document on DocuSign. *See* ECF No. 15-1 at 8; ECF No. 15-3 at ¶ 12. Nordstrom says King then signed the same 2022 version of the DSA another time on August 28, 2023 by affixing an electronic signature. *Id.*

Nordstrom then says it updated its DSA in December 2023, but did not ask for or obtain King's signature. *Id.* at 9–10. Instead, Nordstrom says it sent a company-wide email with a link to the new 2024 version of the DSA, put a warning on a separate website, and if employees kept working after Nordstrom circulated that email/warning, then all of the employees impliedly agreed to the 2024 DSA terms. *Id.*

King denies that she affixed her electronic signature, either in April of 2023 or August of 2023. *See* Declaration of Heidi King at ¶ 4. She denies electronically signing any purported arbitration agreement as described by Nordstrom. *Id.*

King denies affixing her electronic signature because Nordstrom's 2022 DSA uses DocuSign to obtain electronic signatures. *See* ECF No. 15-3 at 35. DocuSign is an electronic signature platform that works by (1) a requesting party sending a request for an electronic signature to the recipient's email address; (2) the recipient then has to click a link to the online document to be able to review; (3) the online document hosted

by DocuSign then has various field/areas marked for the signatory to execute; and (4) the recipient must click a field on the document where the signature is supposed to be affixed, and must click a buttom confirming their signature once they completed all forms and signed in all required places.[1] Once the online document is electronically signed, DocuSign can then create an authentication document, which details, among other things, the email address to which the DocuSign request was sent and the IP address from which the recipient signed the document.[2] As such, the key to determining if a DocuSign signature belongs to a given person requires determining to which email address the requesting party input into DocuSign.

Here, Nordstrom provides no evidence identifying the email address to which the DocuSign requests were sent in April or August 2023. After a thorough search of her personal emails, King does not have possession of any DocuSign requests for her electronic signature, nor any confirmation emails from DocuSign, in either April 2023 or August 2023. *See* King Decl. King likewise does not have any emails from Workday requesting her electronic signature in April or August 2023. *Id.*

Nordstrom's own Workday access log indicates King did not log in or access her Workday account on April 28, 2023. *See* ECF No. 15-3 at 83. And while Nordstrom's Workday access log shows various log-ins on Workday on August 28, 2023 (*id.* at 79), there is no indication it was actually King who logged in as opposed to someone else with access to King's Workday account credentials. In fact, each August 28th log-in

---

[1] *See* https://www.docusign.com/blog/how-does-docusign-esignature-work (last visited Mar. 31, 2026); *see also Newton v. Am. Debt Servs.*, 854 F. Supp. 2d 712, 731 (N.D. Cal. 2012) (explaining the DocuSign process).

[2] https://developers.docusign.com/docs/esign-rest-api/esign101/concepts/recipients/auth/ (last visited Mar. 31, 2026).

lists "Device is Trusted" as "No," indicating Workday was not accessed from a "trusted" computer belonging only to King. *Id.*

If Nordstrom sent a DocuSign signature request to someone on April 28, 2023 and/or August 28, 2023, it did not send it to an email address maintained solely by King. King's corporate email and Workday account were accessible by others. *See* King Decl. As such, someone other than King could have accessed the email or the Workday account and signed "Heidi King" without permission. Nordstrom does not provide summary judgment-level evidence showing otherwise.

As for Nordstrom's 2024 DSA update, King denies opening or seeing the email which Nordstrom says was sent to all employees on December 21, 2023. *Id.* King likewise denies seeing any notice of the 2024 DSA update in Workday. *Id.* In other words, King denies receiving actual notice of the 2024 DSA. *Id.*

In turn, Nordstrom's evidence shows the 2024 DSA "alerts"—a generically-named email and a posting on Workday—make no mention of arbitration, nor do they alert employees that continuing to work for Nordstrom would bind them to an agreement of any kind. *See* ECF No. 15-3 at 57, 64.

**3. Legal Standard.**

"When considering a motion to compel arbitration, a court applies a standard similar to the summary judgment standard[.]" *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004) (cleaned up); *see also Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) ("[D]enial of a motion to compel arbitration has the same effect as a grant of partial summary judgment denying arbitration[.]"); *Greystone Nevada, LLC v. Anthem Highlands Cmty. Ass'n*, 549 F.

App'x 621, 623 (9th Cir. 2013) (reversing an order compelling arbitration when opposing party had been afforded no opportunity to present evidence and argument).

The party opposing arbitration—here, King—receives the benefit of any reasonable doubts, and the court draws all reasonable inferences in that party's favor. *Concat LP*, 350 F. Supp. 2d at 804. Only when there are no genuine disputes of material fact calling into question the arbitration agreement's existence and applicability may the court compel arbitration. *Cross v. Nat'l Union Fire Ins. Co.*, No. 2:19-cv-00787-KJM-DB, 2019 WL 6496838, at *4 (E.D. Cal. Dec. 3, 2019) (citing *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991)).

When a party moves to compel arbitration, a district court determines: "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Johnson v. Walmart Inc.*, 57 F.4th 677, 680 (9th Cir. 2023) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2020)). Thus, "courts should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement nor (absent a valid provision specifically committing such disputes to an arbitrator) its enforceability or applicability to the dispute is in issue." *Granite Rock Co. v. International Bhd. of Teamsters*, 561 U.S. 287, 299 (2010); *Revitch v. DIRECTV, LLC*, 977 F.3d 713, 716 (9th Cir. 2020). Doubts concerning the scope of an arbitration clause are resolved in favor of arbitration, but **no presumption exists concerning whether an agreement to arbitrate was made**. *Johnson*, 57 F.4th at 680-81.

"When determining whether parties have agreed to submit to arbitration, courts apply state-law principles of contract formation and interpretation." *Suski v. Coinbase,*

*Inc.*, 55 F.4th 1227, 1230 (9th Cir. 2022). The party seeking to compel arbitration bears the burden of proving by a preponderance of the evidence that the parties formed an agreement to arbitrate. *Reichert v. Rapid Invs., Inc.*, 56 F.4th 1220, 1227 (9th Cir. 2022); *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014). Nordstrom's Motion is premised on application of California state contract law. *See, e.g.,* ECF No. 15-1 at 12–13. As such, King applies California law principles here.

"[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010). "Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about that matter." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) (emphasis in original) (internal citation omitted). Whether the court or the arbitrator decides arbitrability is "an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (internal quotation omitted).

However, "challenges to the very existence of the contract are, in general, properly directed to the court." *Kum Tat Ltd. v. Linden Ox Pasture, LLC*, 845 F.3d 979, 983 (9th Cir. 2017). This is because "arbitration is a matter of contract and a party cannot be required to submit any dispute which he has not agreed so to submit." *AT & T Techs. Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (internal quotation omitted). In other words, "[t]he fundamental threshold question of whether

there *exists* a binding contract (of which an arbitration clause is a part) cannot be delegated because it cannot be assumed that a delegation clause contained therein must be given effect." *Eiess v. USAA Fed. Sav. Bank*, 404 F. Supp. 3d 1240, 1248 (N.D. Cal. 2019) (emphasis in original). While the court generally resolves ambiguities in arbitration agreements in favor of arbitration, it resolves ambiguities as to the delegation of arbitrability in favor of court adjudication. *See Kaplan*, 514 U.S. at 944–45.

**4. Argument & Authorities.**

**A. Nordstrom failed to prove King signed the 2022 DRA.**

While California and federal law favor arbitration, *see St. Agnes Medical Ctr. v. PacifiCare of Cal.*, 31 Cal. 4th 1187, 1195 (Cal. 2003), that policy does not apply unless the parties agreed to arbitrate their dispute. *Espejo v. Southern California Permanente Med. Grp.*, 246 Cal. App. 4th 1047, 1054 (Cal. Ct. App. 2016). King receives the benefit of any reasonable doubt and all inferences are interpreted in her favor on the issue of contract formation. *Concat LP*, 350 F. Supp. 3d at 804; *Cross*, 2019 2019 WL 6496838, at *4. Here, Nordstrom failed to demonstrate King, to the exclusion of all others, signed the 2022 DRA.

Valid contracts require mutual consent in California. *Monster Energy Co. v. Schechter*, 7 Cal.5th 781, 789 (Cal. 2019). "The existence of mutual consent is determined by objective rather than subjective criteria, the test being what the outward manifestations of consent would lead a reasonable person to believe. Accordingly, the primary focus in determining the existence of mutual consent is upon the acts of the parties involved." *Id.* (citations omitted). Here, the only evidence Nordstrom puts

forward to show King supposedly consented to arbitrate using the 2022 DRA are two electronic documents with the name "Heidi King" typed onto the signature line. *See* ECF No. 15-3 at 35, 44. Nordstrom, however, submits no evidence proving it was actually King who received an email from DocuSign, opened the DocuSign email, clicked the link to the DocuSign server, or affixed her name to the 2022 DRA.

California Civil Code § 1633.9 governs authentication of electronic signatures. Under Section 1633.9, an electronic signature can be authenticated by "showing the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable." *Id.*

**i. A trio of cases confirm Nordstrom's showing is inadequate.**

To authenticate the purported electronic signature as King's, Nordstrom must prove the alleged electronic signature "was the act of the person." Cal. Civ. Code § 1633.9(a). In other words, Nordstrom must prove **King**—rather than another person—completed the act of electronically signing the document. Nordstrom fails to make that showing on a summary judgment standard.

In *Fabian v. Renovate Am., Inc.*, 42 Cal. App. 5th 1062 (Cal. Ct. App. 2019), the defendant sought to compel arbitration based on a contract bearing an electronic signature. *Id.* at 1064–65. The court rejected the defendant's contention that "the Contract bearing [plaintiff's] electronic initials and signature is authenticated by DocuSign. Standing alone, that fact is not sufficient to compel a result in [defendant's] favor as a matter of law." *Id.* at 1068. The court noted the defendant "offered no evidence about the process used to verify [plaintiff's] electronic signature via DocuSign," including how the contract was provided to the plaintiff or "how

[plaintiff's] identification was verified as the person who actually signed the Contract." *Id.* at 1069. The defendant did not explain "the process used to obtain and verify [plaintiff's] 'docusigned' electronic initials and signature," or state "how the electronic signature could have only been placed on the Contract by [plaintiff]." *Id.* at 1069-70. "Most importantly, [defendant] did not explain how [plaintiff's] electronic initials and signature were the 'act of [plaintiff]' by offering evidence that DocuSign assigned [the plaintiff] a unique 'identity verification code' to initial and sign the Contract." *Id.* at 1070.

The same is true here. Nordstrom did not explain the process used to obtain the DocuSign signature, did not state or provide evidence showing to which email address the DocuSign initiating email was sent, and did not provide evidence showing only King could have signed. Rather, it's entirely plausible Nordstrom sent the DocuSign request to an email address accessible by other employees, such as a company-owned email address. *See* King Decl at ¶ 7. Someone else other than King could have affixed "Heidi King" to the signature line. Nordstrom's evidence does not definitively show otherwise.

In *Bannister v. Marinidence Opco, LLC*, 64 Cal. App. 5th 541 (Cal. Ct. App. 2021), the employer attached an arbitration agreement purportedly electronically signed by the plaintiff during an onboarding process. *Id.* at 544. The defendant claimed that "[t]o access the online onboarding portal, an individual must enter an employee's first and last name and Social Security number, in addition to entering [defendant's] 'Client ID' and pin code (the same 'Client ID' and pin code for all employees) … Based on these requirements, according to [defendant], the electronic signature on the

arbitration agreement could only have been placed there by [plaintiff]." *Id.* at 546. The court affirmed denial of the motion to compel arbitration, noting

> Substantial evidence supports the trial court's conclusion that [defendant] failed to authenticate the electronic signature on the arbitration agreement as [plaintiff's]. [Defendant's] evidence did not establish that [plaintiff] was assigned a unique, private user name and password such that she is the only person who could have accessed the onboarding portal and signed the agreement; instead, the evidence showed that the requisite "Client ID" and PIN code was not employee-specific, and [the manager] had access to the information necessary to access the onboarding portal via employee personnel records.

*Id.* at 547.

"Because [plaintiff's] evidence showed that she was not the only person who could have executed the arbitration agreement, we disagree that the trial court committed any legal error [in denying the motion to compel arbitration]." *Id.* at 548. The same is true here: Nordstrom does not provide non-conclusory evidence demonstrating King was assigned a unique username and password needed to access the DocuSign document, nor any other unique identifiers that would ensure only King and nobody else could access and affix "Heidi King" to the document. In addition to other Nordstrom employees having access to King's email and Workday account (*see* King Decl. at ¶ 7), Workday was vulnerable to hacking and data breaches, including the time period preceding King filing suit.[3] In other words, Nordstrom cannot guarantee it was King, to the exclusion of all others, who affixed the electronic signature to the document. And here, King denies doing so. *See* King Decl. at ¶ 7.

---

[3] https://blog.workday.com/en-us/workdays-response-salesloft-drift-security-incident.html (last visited Mar. 31, 2026).

Likewise, in *Ruiz v. Moss Bros. Auto Group*, 232 Cal. App. 4th 836 (Cal. Ct. App. 2014), the defendant submitted a declaration that "summarily asserted that [plaintiff] 'electronically signed' the 2011 agreement" but did not explain how defendant verified that plaintiff electronically signed the agreement. *Id.* at 839. The defendant claimed each employee is given a unique ID and password and are required to log into the company HR system so they can review and sign the arbitration agreement. *Id.* at 840–41. However, the defendant "did not indicate whether or if so how [it] ascertained that [plaintiff] electronically signed, or was the person who electronically signed, the employee acknowledgement form, including the 2011 agreement." *Id.* at 841. The court found the employer "did not present sufficient evidence to support a finding that the electronic signature on the 2011 agreement was the act of [plaintiff]." *Id.* at 842.

The defendant's declarations were insufficient to meet Civil Code § 1633.9's standard for authentication. For example, the defendant "did not explain how she arrived at [the] conclusion [that plaintiff was the person who signed the agreement] or inferred [plaintiff] was the person who electronically signed the 2011 agreement…. [Defendant] never explained how [plaintiff's] printed electronic signature, or the date and time printed next to the signature, came to be placed on the 2011 agreement." *Id.* at 843–44. The court noted: "In the face of [plaintiff's] failure to recall electronically signing the 2011 agreement, the fact the 2011 agreement had an electronic signature on it in the name of [plaintiff], and a date and time stamp for the signature, was insufficient to support a finding that the electronic signature was, in fact, 'the act of' [plaintiff]." *Id.* Here, too, Nordstrom fails to show whether and, if so, how it ascertained that King, as opposed to someone else, opened, clicked, and signed the DocuSign document. And

Nordstrom's witness, Justin Fischbeck, merely states in conclusory fashion that King opened and signed the document, without any explanation of how he arrived at or inferred that conclusion.

Nordstrom says it believes King affixed the signature onto the 2022 DRA agreement because she was required to create a Workday account (ECF No. 15-3 at ¶ 10) and Workday required King to sign the 2022 DRA through DocuSign (*id.* at ¶ 13). As demonstrated by *Fabian*, *Bannister*, and *Ruiz*, Nordstrom's showing is insufficient to demonstrate with summary judgment-level evidence that it was, in fact, King (rather than anyone else) who affixed "Heidi King" to the purported agreement.

**ii. Nordstrom failed to show it sent King the DocuSign request.**

Nordstrom fails to show the email address to whom it sent the purported DocuSign request. This is critical because if the relevant DocuSign request was sent to an email account accessible by others, it's plausible someone other than King could open, click, and sign a DocuSign document using King's name without permission. The same is true of accessing a DocuSign document through a Workday account accessible by others: it leaves open the possibility that someone other than King accessed and signed the document using her name. Nordstrom also fails to provide the authentication information available through DocuSign, which would share the email accounts at issue and IP location data. This information could be used to verify who the signer actually is. Rather than provide this best evidence, Nordstrom relies on secondhand testimony from Mr. Fischbeck, who merely attests to what he sees on the documents and his assumptions about account access. This violates the best evidence rule. *See United States v. Bennett*, 363 F.3d 947, 953–54 (9th Cir. 2004) (barring

testimony due to violation of "best evidence rule" where an agent simply testified about what GPS data "revealed" rather than submitting the GPS data itself).

Rather than supply the best evidence of the initiating email, the authentication page, or GPS data, Nordstrom vaguely describes the typical process, *i.e.*, what's "supposed" to happen. But Nordstrom failed to show it actually sent an initiating email to **King** to the exclusion of all others, or that **King** actually received such an email. Nordstrom also fails to demonstrate King's Workday account could not be accessed by other Nordstrom employees.

Because Nordstrom failed to specifically identify to whom it allegedly sent the initiating email, and because Nordstrom failed to demonstrate only King had exclusive access to the Workday account, it's plausible Nordstrom sent this initiating email to a shared email account that would not require the "signer" to be King.

It's telling that Nordstrom did away entirely with requesting employee signatures starting in December 2023 (*see* ECF No. 15-3 at ¶ 18–24), shortly after Nordstrom supposedly obtained King's signature in August; Nordstrom apparently has so little regard for obtaining proof of employee consent to arbitrate that it no longer bothers asking for consent at all. It speaks volumes that Nordstrom did not provide a certificate of authenticity which would be readily available from DocuSign.[4]

Nordstrom's entire argument hinges on whether it sent this alleged email to King and/or whether King is the only person who could access and sign the document

---

[4] *See* https://www.docusign.com/esignature/electronic-signature-certification ("Each signed document has its own certificate of authenticity. Digital signatures use cryptography to ensure the authenticity of the person who electronically signs a document.") (last visited Mar. 31, 2026).

on Workday or DocuSign. Nordstrom failed to show with summary judgment-level evidence that such an email was actually sent and, if it was, to whom. Nordstrom likewise failed to show with summary judgment-level evidence that only King had access to the Workday account and DocuSign page. As in *Bannister*, Nordstrom's evidence fails to show King was the "only person who could have executed the arbitration agreement [through the onboarding process.]" 64 Cal. App. 5th at 548. And as in *Ruiz*, even though Nordstrom attempts to show the electronic signature was placed by someone with a username and password to Workday, Nordstrom fails to show only King had access to such an account. 232 Cal. App. 4th at 843-44.

Thus, Nordstrom fails to demonstrate King, to the exclusion of all others, affixed "Heidi King" on the 2022 DRA. Because Nordstrom fails to meet its burden, the Court should deny its Motion.

**B. Nordstrom's 2024 DRA lacks mutual assent.**

To form a contract under California law, there "must be actual or constructive notice of the agreement and the parties must manifest mutual assent." *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 512–13 (9th Cir. 2023). Parties may manifest assent through their conduct, however "'[t]he conduct of a party is not effective as a manifestation of his assent unless he intends to engage in the conduct and knows or has reason to know that the other party may infer from his conduct that he assents.'" *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022) (alteration in original) (quoting Restatement (Second) of Contracts § 19(2) (1981)).

In California, internet contracts are classified "by the way in which the user purportedly gives their assent to be bound by the associated terms: browsewraps,

clickwraps, scrollwraps, and sign-in wraps." *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 463 (Cal. Ct. App. 2021). The first, a browsewrap agreement, is "one in which an internet user accepts a website's terms of use merely by browsing the site." *Id.* Courts have consistently held this type of agreement to be unenforceable, as individuals do not have inquiry notice. *See Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1178–79 (9th Cir. 2014).

As described, the 2024 DRA is a browsewrap agreement because Nordstrom maintains its employees are bound merely by virtue of the document existing on its intranet, and because employees have passive access to the document and continued working for Nordstrom. *See* ECF No. 15-1 at 9–10, 13.

Nordstrom says it (1) sent a company-wide email with the subject line "Happy Holidays" with the body of the email stating in generic terms that Nordstrom updated its policies, (2) put a notice on the Workday homepage during the three-week long 2023 Christmas and New Year holiday season (Dec. 21, 2023 to Jan. 12, 2024) similarly saying it updated its policies, and (3) put it up on Nordstrom's intranet where employees would have to search for, open, and view the document. *See* ECF No. 15-3 at ¶¶ 19–20. According to Nordstrom, because it did these things, all employees who continued working for Nordstrom are bound and their right to a jury trial is forever altered.

Nordstrom provides no evidence King had actual knowledge of the 2024 DRA. As such, the validity of the 2024 DRA turns on whether Nordstrom put a reasonably prudent employee on inquiry notice of its terms. *Nguyen*, 763 F.3d at 1177. Inquiry notice "depends on the design and content of the website and the agreement's

webpage." *Id.* (collecting cases).

Here, Nordstrom sent an innocuously-titled email with the subject line "Nsider: Happy Holidays." King never opened this email, suspecting it was a generic holiday-themed email from Nordstrom corporate, rather than containing a link to a document which would curtail her rights. *See* King Decl. at ¶ 9. No reasonable employee would read the subject line "Happy Holidays" and suspect the email's contents would alter their rights—many employees would ignore such an email or it might be directed to their spam folder.

Even if an employee opened the email, they would have to scroll multiple pages down to find the "Dispute Resolution Program Updates" section. *See* ECF No. 15-3 at 53–57. The notice only says Nordstrom updated its program—there is nothing in the email stating employees would be bound by an agreement to arbitrate or their rights would be affected by the update, simply by continuing to work at Nordstrom. *Id.* at 57. Simply telling employees "we updated our terms" does not put the employees on notice those terms (or the updates made to them) will bind the employees to a contract through continued employment. *See Diaz v. Sohnen Enterprises*, 34 Cal. App. 5th 126, 130 (Cal. Ct. App. 2019) ("California law [ ] is settled: when an employee continues his or her employment **after notification that an agreement to arbitration is a condition of continued employment**, that employee has impliedly consented to the arbitration agreement." (emphasis added) (collecting cases)); *cf. McCarthy v. Xerox Corp.*, No. 8:25-cv-01976 ADS, 2026 WL 413631, at *4–5 (C.D. Cal. Feb. 3, 2026) (notifying employees via company email that an updated policy "requires arbitration of most legal disputes … after this date"). Here, the email notification did not inform

employees an agreement to arbitrate was a condition of continued employment. All it said was "we updated our policy." That's not enough to put a reasonable employee on notice that continued employment would bind them to a contract.

Nordstrom also says it put a warning on Workday for a short period during the Christmas and New Year holiday season in December 2023 and January 2024. *See* ECF No. 15-3 at ¶ 20. That Workday notice reads the same as the email notice: all it says is the DRA was updated. It does not mention arbitration or warn employees that continued employment would bind them to a contract. *Id.* at 64. Here, King does not believe she logged on to Workday during that time period and did not see the notice on Workday. *See* King Decl. at ¶ 11.

Nordstrom also points to its Code of Conduct, an entirely separate document. Nordstrom expects that employees "are responsible for reviewing all policies posted" on Nordstrom's intranet website. *Id.* at ¶ 23. And Nordstrom uploaded the 2024 DRA to the intranet. Nordstrom claims King was therefore responsible for reading the 2024 DRA. "Responsible" is the key word.

The Code of Conduct does not actually say what Nordstrom claims. It also does not say any written policies would curtail employee rights or require arbitration. Instead, the Code says employees are "expected to comply with any policies, procedures, and guidelines that apply to [their] location or position." *See* ECF No. 15-3 at 85. Then it **encourages** employees to read company policies—it does not **require** them to do so. That was King's understanding as well. *See* King Decl. at ¶ 12. It's also unreasonable to expect hourly-paid employees to spend their workdays reading through a litany of company policy documents to ferret out a written policy that might

alter their constitutional rights, rather than doing their day-to-day jobs. In short, a company Code of Conduct which does not mention arbitration, but merely encourages (but does not obligate) employees to read all other policies, combined with an innocuous written policy that seeks to take away employees' right to a jury trial without them having to actually read, review, or agree to those terms, is insufficient notice.

Nordstrom's 2024 DRA efforts do not put a reasonably prudent employee on inquiry notice that their Constitutional right to a trial by jury would be taken away simply by continuing to work.

**C. Nordstrom fails to show King waived her constitutional rights.**

Nordstrom's DRA, whether the 2022 version or the 2024 version, seeks to force employees to relinquish their Constitutional right to a jury trial enshrined in the Seventh Amendment. That is untenable and unsupportable.

The Seventh Amendment preserves the right to trial by jury in "[s]uits at common law, where the value in controversy shall exceed twenty dollars." U.S. CONST. amend. VII. It is a "personal constitutional right." *Commodity Futures Trading Com'n v. Schor*, 478 U.S. 833, 848–49 (1986). By definition, an arbitration agreement acts as a waiver of the parties' right to have disputes resolved in court by a jury. Thus, an arbitration agreement operates as a waiver of the Seventh Amendment right to trial by jury. *See Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 668 (6th Cir. 2003); *see also Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal. App. 3d 987, 993 (Cal. Ct. App. 1972) (the "principle of knowing consent applies with particular force to provisions for arbitration."); *Com. Factors Corp. v. Kurtzman Bros.*, 131 Cal. App. 2d 133, 136 (Cal. Ct. App. 1955) ("If a party wishes to bind in writing another to an

agreement to arbitrate future disputes, such purpose should be accomplished in a way that each party to the arrangement will fully and clearly comprehend that the agreement to arbitrate exists and binds the parties thereto." (cleaned up)).

The Supreme Court has long instructed that the right to a civil jury trial is "fundamental" and that "every reasonable presumption should be indulged against its waiver." *Hodges v. Easton*, 106 U.S. 408, 412 (1882); *Slocum v. New York Life Ins. Co.*, 228 U.S. 364, 385 (1913); *Aetna Ins. Co. v. Kennedy to Use of Bogash*, 301 U.S. 389, 393 (1937); *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500 F.3d. 171, 188 (2d Cir. 2007) (recognizing the right to a jury trial "is fundamental and a presumption exists against its waiver").

Generally, a constitutional waiver is only effective if it is "knowing" and "voluntary." *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938); *Brady v. United States*, 397 U.S. 742, 748 (1970); *see also Cannon v. Wells Fargo Bank N.A.*, 917 F. Supp. 2d 1025,1057–58 (N.D. Cal. 2013) (contractual jury waivers must be made knowingly, voluntarily, and intelligently).

Unlike normal contract principles of mutual assent, which are objective, this standard is **subjective**—a person must have actual knowledge of the right she is waiving. *Brady*, 397 U.S. at 748; *Cannon*, 917 F. Supp. 2d at 1057–58. Courts have consistently held that this standard applies when a person contractually waives her rights under the Seventh Amendment. *See In re Cty. of Orange*, 784 F.3d 520, 526 (9th Cir. 2015) (citing *Nat'l Equip. Rental Ltd. v. Hendrix*, 565 F.2d 255, 258 (2d Cir. 1977)) (a pre-dispute contractual waiver of a jury trial right is permitted "as long as the parties waived their rights knowingly and voluntarily."); *Palmer v. Valdez*, 560 F.3d 965, 968

(9th Cir. 2009) ("A valid [jury] waiver in a civil trial must be made knowingly and voluntarily based on the facts of the case."); *see also Hergenreder v. Bickford Senior Living Corp.*, 656 F.3d 411, 420 (6th Cir. 2011) ("this court must ask whether [a Seventh Amendment] waiver was knowing and voluntary"); *Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 222 (3d Cir. 2007) ("To be valid, a [civil] jury waiver must be made knowingly and voluntarily based on the facts of the case"); *Bakrac, Inc. v. Villager Franchise Sys., Inc.*, 164 F. App'x 820, 823 (11th Cir. 2006) ("A party may validly waive its Seventh Amendment right to a jury trial so long as the waiver is knowing and voluntary."); *Leasing Serv. Corp. v. Crane*, 804 F.2d 828, 833 (4th Cir. 1986) ("[W]e agree with those courts that have held that the party seeking enforcement of the [jury] waiver must prove that consent was both voluntary and informed.").

Thus, the Court may only send King's legal claims to an arbitral forum (thereby denying her a jury trial) if she has "knowingly" signed an arbitration agreement. Here, King denies knowingly signing any such arbitration agreement. *See* King Decl. at ¶ 13. This "knowing and voluntary" test for constitutional waivers is significantly more demanding than the standard impose by ordinary contracting principles. Rather than merely requiring a "manifestation of mutual assent," (Restatement (Second) of Contracts § 18 (1981)), waiver is only valid under this heightened standard if "done with sufficient **awareness** of the relevant circumstances and likely consequences." *Brady*, 397 U.S. at 748 (emphasis added). Even the Federal Arbitration Act does not abrogate the right to trial by jury; it simply holds that, as a matter of federal law, arbitration agreements are enforceable like other any other contract. *Southland Corp.*

*v. Keating*, 465 U.S. 1, 10 (1984). After all, the purpose of the FAA was "not to mandate the arbitration of all claims, but merely the enforcement … of privately negotiated arbitration agreements." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219 (1985).

Thus, while parties can waive their right to trial by jury, it's still incumbent on the party espousing waiver to prove knowledge and intent. Courts apply the following factors to determine whether a contractual jury waiver was "knowing and voluntary":

> 1) the negotiability of contract terms and negotiations between the parties concerning the waiver provision; 2) the conspicuousness of the waiver provision in the contract; 3) the relative bargaining power of the parties; and 4) the business acumen of the party opposing the waiver.

*Cannon*, 917 F. Supp. 2d at 1058 (quoting *Price v. Cushman & Wakefield, Inc.*, 808 F. Supp. 2d 670, 705 (S.D.N.Y. 2011)); *see also Parris v. Wyndham Vacation Resorts, Inc.*, No. 11-00258 SOM-BMK, 2013 WL 1296231, at *1 (D. Haw. Mar. 28, 2013) (listing similar factors, quoting *Phoenix Leasing Inc. v. Sure Broadcasting, Inc.*, 843 F. Supp. 1379, 1384 (D. Nev. 1984)). Federal courts across the country consistently use these types of factors "to determine whether a waiver was knowing, voluntary, and intelligent." *Breham v. Asset Acceptance, LLC*, No. CV-09-1474-PHX-GMS, 2010 WL 1735147, at *1 (D. Ariz. Apr. 28, 2010). *See, e.g., Nat'l Equip. Rental*, 565 F.2d at 258 (considering conspicuousness, negotiability, and gross inequality in bargaining power); *Miller v. Sun Capital Partners, Inc.*, No. 13-1996-RGA, 2016 WL 4941989, at *5 (D. Del. Sept. 15, 2016) ("A contractual waiver is knowing and voluntary when the facts of the case show that '(1) there was no gross disparity in bargaining power between the parties; (2) the parties are sophisticated business entities; (3) the parties had an

opportunity to negotiate the contract terms; and (4) the waiver provision was conspicuous.'")) (quoting *First Union Nat'l Bank v. United States*, 164 F. Supp. 2d 660, 663 (E.D. Pa. 2001)).

District courts in the Ninth Circuit appear to have "uniformly placed the burden" to prove waiver of the right to a jury trial on the party seeking to enforce the waiver—here, Nordstrom. *Century 21 Real Estate LLC v. All Prof'l Realty, Inc.*, No. Civ. 2:10-2751 WBS GGH, 2012 WL 2682761, at *3 (E.D. Cal. July 6, 2012) (citation omitted). Given the constitutional nature of the right at stake, placing the burden on Nordstrom is appropriate. *See Crane*, 804 F.2d at 833; *Cannon*, 917 F. Supp. 2d at 1058.

Here, Nordstrom has not carried its burden to prove King knowingly, voluntarily, and intelligently waived her Seventh Amendment rights. Nordstrom confirms its arbitration agreement is mandatory and non-negotiable. *See* ECF No. 15-3 at ¶¶ 12–13. As such, even if Nordstrom could prove King signed the DRA, Nordstrom concedes the jury waiver was a take-it-or-leave-it proposition (*i.e.*, she could either waive her right to a jury, or find work elsewhere). In this situation, a gross disparity in bargaining power exists between Nordstrom and King. By Nordstrom's own telling, the waiver would be mandatory, not voluntary. *Smith v. Bank of Hawaii*, No. 16-00513 JMS-RLP, 2018 WL 1662107, at *10 (D. Haw. Apr. 5, 2018) (finding take-it-or-leave-it jury waiver to be part of "non-negotiable terms in standard forms", thus weighing in favor of finding ineffective waiver). This factor weighs against granting Nordstrom's motion.

Second, there is no question King—who was applying to work in a retail sales position that would pay her $16.50 per hour—lacked the "business or professional

experience" of a sophisticated party who can knowingly waive the right to a jury trial. Courts evaluate the business experience of the contracting party to ensure the party understood the jury waiver and its ramifications. *MZ Ventures, LLC v. Mitsubishi Motor Sales of Am., Inc.*, No. CV9902395 DDP-AIJx, 1999 WL 33597219, at *16 (C.D. Cal. Aug. 31, 1999). Here, King worked as a salesperson in a retail store. She had no knowledge of the legal ramifications of an "agreement to arbitrate." *See* King Decl. at ¶ 14. She did not intelligently waive her right to a jury trial. *Id.* This factor weighs in King's favor or, at least, raises a disputed issue of fact. *MZ Ventures*, 1999 WL 33597219, at *16.

Further, the terms of the DRA are relatively inconspicuous. As told by Nordstrom, the 2022 DRA was included with a litany of other boilerplate, non-negotiated forms the employees are required to click through. *See* ECF No. 15-3 at ¶ 13–14 (confirming the onboarding process includes "various other personnel documents through Workday during the onboarding process" including "Customer Email Communication Expectations; Nordstrom Expectations Acknowledgement; Nordstrom Notice and Acknowledgement of Pay Rate-California; Wages, Overpayment, and Indebtedness to Nordstrom, and the Code of Conduct"). Such a "printed form provision buried in a multitude of words is too weak an imitation of a genuine agreement to be treated as a waiver of so important a constitutional safeguard[.]" *Nat'l Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 322–33 (1964) (Black, J., dissenting); *see also Dreiling v. Peugeot Motors of Am., Inc.*, 539 F. Supp. 402, 403 (D. Colo. 1982) ("A constitutional guarantee so fundamental as the right to jury trial cannot be waived unknowingly by mere insertion of a waiver provision on the twentieth

page of a twenty-two page standardized form contract."). The 2022 DRA itself is 8 pages of dense legalese which, according to Nordstrom, is presented to employees on a computer screen. *See* ECF No. 15-3 at 28–35. The 2024 DRA is no better, as it appears to be just as dense and filled with similar difficult-to-understand legalese, but in smaller typeface, hidden amongst a litany of other written policies on Nordstrom's intranet system. *Id.* at 46–51. Further, the 2024 DRA does not even necessitate employees **view** or **read** the document. It is permeated by unfair surprise. This factor therefore weighs in King's favor.

Considering all the relevant factors applied in caselaw, Nordstrom has not met its burden to prove King knowingly, voluntarily, and intelligently waived her Seventh Amendment right to a jury trial. Because Nordstrom has failed to meet its burden, the Court should deny Nordstrom's motion to compel King to waive her jury trial rights and attend arbitration.

**5. Conclusion.**

For the foregoing reasons, King respectfully requests the Court deny Nordstrom's Motion to Compel Arbitration.

Date: March 31, 2026

Respectfully submitted,

*/s/ William M. Hogg*
Joshua I. White
William M. Hogg
**LAUREL EMPLOYMENT LAW**

*Counsel for King & the Commissioned Employees*

## Certificate of Service

I hereby certify that I electronically filed the foregoing document(s) with the Clerk of Court for the United States District Court, Central District of California, by using the Court's CM/ECF system on March 31, 2026. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the Court's CM/ECF system.

*/s/ William M. Hogg*
William M. Hogg

## L.R. 11-6.2 Certificate of Compliance

The undersigned, counsel of record for Plaintiff Heidi King, certifies that this brief contains 6,840 words, which was determined by using Microsoft Word's word count feature. I certify that this word count complies with the word limit of L.R. 11-6.1.

*/s/ William M. Hogg*
William M. Hogg