Amy K. Todd (SBN 208581)
JACKSON LEWIS P.C.
225 Broadway, Suite 1800
San Diego, California 92101
Telephone: (619) 573-4900
Facsimile: (619) 573-4901
Amy.Todd@jacksonlewis.com

Kelli M. Dreger (SBN 267404)
JACKSON LEWIS P.C.
200 Spectrum Center Drive, Suite 500
Irvine, California 92618
Telephone: (949) 885-1360
Facsimile: (949) 885-1380
Kelli.Dreger@jacksonlewis.com

Attorneys for Defendant
NORDSTROM. INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HEIDI KING, Individually and for Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>NORDSTROM, INC.,<br><br>Defendant. | Case No. 8:26-cv-00121-MRA-KES<br><br>**DEFENDANT NORDSTROM, INC.'s OPPOSITION TO PLAINTIFF'S MOTION TO REMAND OR, ALTERNATIVELY, FOR LIMITED JURISDICTIONAL DISCOVERY**<br><br>Date: April 21, 2026<br>Time: 10:00 a.m.<br>Place: Courtroom 9B<br><br>Judge: Monica Ramirez Almadani<br>Magistrate Judge: Karen E. Scott<br>Complaint Filed: December 11, 2025<br>Removal Date: January 15, 2026<br>Trial Date: Not Yet Set |

# TABLE OF CONTENTS


I. INTRODUCTION .......... 6

II. RELEVANT FACTS AND PROCEDURAL HISTORY .......... 8

A. Plaintiff's Counsel's Improper Meet And Confer Efforts. .......... 8

B. Plaintiff's Complaint Alleges A Statewide Class Subject To Uniform Wage-and-Hour Policies. .......... 9

C. Plaintiff's Factual Allegations Are Pleaded In Classwide Terms. .......... 10

D. Nordstrom Used Reasonable Estimates For The Notice of Removal. .......... 11

III. ARGUMENT .......... 13

A. Plaintiff Misrepresents The Removal Standard Under CAFA. .......... 13

B. Nordstrom Satisfies CAFA's Numerosity Requirement. .......... 15

C. Nordstrom Satisfies CAFA's Amount-In-Controversy Requirement .......... 17

1. Plaintiff's Waiting Time Penalties Claim Alone Places More Than $5,000,000 In Controversy. .......... 18

2. Nordstrom's Assumptions Are Reasonable Because They Are Grounded In Plaintiff's Own Classwide Allegations And Requested Remedies. .......... 20

3. Plaintiff's Additional Claims Further Support That The Amount In Controversy Is Satisfied. .......... 20

D. Plaintiff's Motion Should Be Denied Because Plaintiff Offers No Countervailing Evidence Or Alternative Calculations. .......... 21

E. Plaintiff's Alternative Request For Jurisdictional Discovery Should Be Denied. .......... 22

IV. CONCLUSION .......... 24

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Abrego Abrego v. The Dow Chem. Co.*,
443 F.3d 676 (9th Cir. 2006) ........................................................................24

*Arias v. Residence Inn*,
936 F.3d 920 (9th Cir. 2019) ........................................................15, 16, 20, 21

*Avila v. Kiewit Corp*.,
789 F. App’x 32 (9th Cir. 2019) ..................................................................17

*Bryant v. NCR Corp.*,
284 F. Supp. 3d 1147 (S.D. Cal. 2018)......................................................18, 25

*Cavada v. Inter-Continental Hotels Grp., Inc.*,
No. 19cv1675-GPC (BLM), 2019 U.S. Dist. LEXIS 190302 (S.D. Cal. Nov. 1, 2019) ...........................................................................................17

*Dart Cherokee Basin Operating Co., LLC v. Owens*,
574 U.S. 81 (2014)..........................................................................7, 14, 15, 22

*Ehrman v. Cox Commc’ns, Inc.*,
932 F.3d 1223 (9th Cir. 2019) .......................................................................16

*Gonzalez v. Peak Cal. Rest. Grp., LLC*,
2025 U.S. Dist. LEXIS 203740, (N.D. Cal. 2025) ..........................................22

*Hawkins v. Walmart, Inc.*,
No. 1:24-cv-00374-KES-SKO, (E.D. Cal. Aug. 22, 2024) ..............................24

*Heatley v. Lin Rogers Elec. Contractors, Inc.*,
No. SACV 22-000042-CJC(KESx), 2022 U.S. Dist. LEXIS 43152 (C.D. Cal. Mar. 10, 2022)...................................................................................22

*Ibarra v. Manheim Invs., Inc.*,
775 F.3d 1193 (9th Cir. 2015) ..............................................................15, 16, 22

*Jauregui v. Roadrunner Transp. Servs., Inc.*,
28 F.4th 989 (9th Cir. 2022) .........................................................................20

*Jones v. Tonal Systems, Inc.*,
No. 3:23-cv-1267-JES-BGS, (S.D. Cal. Jan. 31, 2024) ..................................23

*King v. Great Am. Chicken Corp., Inc.*,
903 F.3d 875 (9th Cir. 2018) ....................................................................16

*Korn v. Polo Ralph Lauren Corp.*,
536 F. Supp. 2d 1199 (E.D. Cal. 2008) ..........................................................17

*LaCross v. Knight Transp. Inc.*,
775 F.3d 1200 (9th Cir. 2015) ....................................................................15

*Laub v. U.S. Dep't of the Interior*,
342 F.3d 1080 (9th Cir. 2003) ....................................................................24

*Lewis v. Verizon Communs., Inc.*,
627 F.3d 395 (9th Cir. 2010) ....................................................................*passim*

*Lucas v. Michael Kors (USA) Inc.*,
No. CV 18-1608-MWF, 2018 U.S. Dist. LEXIS 78510 (C.D. Cal. May 9, 2018) ....................................................................17

*Muniz v. Pilot Travel Ctrs. LLC*,
2007 U.S. Dist. LEXIS 31515 (E.D. Cal. Apr. 30, 2007) ..................................17

*Osorio v. Nordstrom, Inc.*,
No. 8:25-cv-02552-FWS-(ADSx), ECF No. 37 (C.D. Cal. Feb. 2, 2026)...10, 25

*Patel v. Nike Retail Servs., Inc.*,
58 F. Supp. 3d 1032 (N.D. Cal. 2014).........................................................22, 23

*Perea v. Fedex Ground Package Sys.*,
No. 20-cv-00610-DMS-AHG, 2020 U.S. Dist. LEXIS 124433 (S.D. Cal. July 15, 2020)....................................................................18, 25

*Perez v. Rose Hills Co.*,
131 F.4th 804 (9th Cir. 2025) ....................................................................22

*Rea v. Michaels Stores Inc.*,
742 F.3d 1234 (9th Cir. 2014) ....................................................................22

*Ritenour v. Carrington Mortg. Servs. LLC*,
228 F. Supp. 3d 1025 (C.D. Cal. 2017) .........................................................17, 22

*Roa v. TS Staffing Servs., Inc.*,
No. 2:14-CV-08424-ODW, 2015 U.S. DIST. LEXIS 7442 (C.D. Cal. 2015) ....................................................................22

*Rombaut v. U.S. Concepts LLC*,
No. 2:25-cv-02802-AB (Ex) ........................................................................22

*Salter v. Quality Carriers, Inc.*,
974 F.3d 959 (9th Cir. 2020) ..................................................7, 15, 22

*Stanley v. Distrib. Alternatives, Inc.*,
No. EDCV 17-2173 ........................................................................22

*Unutoa v. Interstate Hotels & Resorts, Inc.*,
No. 2:14-cv-09809-SVW-PJW, 2015 U.S. DIST. LEXIS 26545 (C.D. Cal. 2015)........................................................................18, 22

*Vikram v. First Student Mgmt., LLC*,
No. 17-cv-04656-KAW, 2017 U.S. Dist. LEXIS 166396 (N.D. Cal. Oct. 6, 2017) ........................................................................17

*Wells Fargo & Co. v. Wells Fargo Exp. Co.*,
556 F.2d 406 (9th Cir. 1977) ........................................................................24

**Statutes**

28 U.S.C. § 1446(a) ........................................................................7

Class Action Fairness Act........................................................................*passim*

California Labor Code section 203........................................................11, 19

**Other Authorities**

Local Rule 11-6.1........................................................................26

Local Rule 7–3........................................................................10

Fed. R. Civ. P. 11 ........................................................................18

Fed. R. Civ. P. 26(d) ........................................................................8

Fed. R. Civ. P. 26(d)(1)........................................................................23

Fed. R. Civ. P. 26(f)........................................................................8, 23

# I. INTRODUCTION

Plaintiff Heidi King's ("Plaintiff") Motion to Remand ("Motion") is baseless and should be denied. Plaintiff does not present any evidence to contradict or dispute the grounds on which Defendant Nordstrom, Inc. ("Nordstrom") removed this action; instead, Plaintiff attacks removal based on the limited and mistaken premise that Nordstrom did not support its Notice of Removal with "evidence."

First, Plaintiff's insistence on "evidence" at the notice stage improperly collapses the jurisdictional inquiry into an adjudication on the merits. Plaintiff also misstates the law, particularly in this action invoking the Class Action Fairness Act ("CAFA"). The removal statute itself provides that a defendant must only file a notice including "a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). The U.S. Supreme Court and Ninth Circuit have confirmed that in cases invoking CAFA, "[a] statement 'short and plain' need not contain evidentiary submissions" and need only contain "a plausible allegation" that the amount in controversy exceeds the threshold. *See Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84, 89 (2014); *see also Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 964 (9th Cir. 2020) (reaffirming that a removing defendant's notice under CAFA "need not contain evidentiary submissions" but only plausible allegations of jurisdictional elements).

Second, as demonstrated in Nordstrom's Notice of Removal, Nordstrom's amount-in-controversy and numerosity showings are properly derived from the allegations in Plaintiff's Complaint. Using Plaintiff's broad, sweeping allegations of class liability, Nordstrom demonstrated that Plaintiff's waiting time penalty claim alone places more than $5,000,000 in controversy using conservative estimates, without even accounting for Plaintiff's other wage-and-hour and statutory claims.

Third, an evidentiary burden arises only if a party challenges removal, and only then must the removing party show by a preponderance of the evidence that the assumptions establishing jurisdiction are reasonable. As explained in detail below and in the Declaration of principal Holly Brackin ("Brackin Decl."), Nordstrom has shown, by a preponderance

of the evidence, that the amount in controversy is satisfied. Specifically, Nordstrom's Notice of Removal relied on a violation rate of no more than 51.2% of the former putative class members, using lower average daily hours than actually worked, as well as the lowest minimum wage rate available during the relevant timeframe. Even using these conservative estimates, the amount in controversy on Plaintiff's waiting time penalty claim alone is well above the $5 million in controversy required by CAFA. Notably, Plaintiff offers no competing evidence in support of her Motion, not even a declaration from Plaintiff purporting to provide any contrary perspective. She proposes no alternative violation rates or any conceivable basis for the unfounded assertion that Nordstrom employed fewer than 100 employees during the putative class period.

Finally, Plaintiff has no basis for the proposition that she is entitled to any discovery at this preliminary stage, much less the sweeping classwide discovery she demands. As detailed in Section III.E below, jurisdictional discovery is inappropriate where, as here, CAFA jurisdiction can be resolved based on readily available information and targeted evidence already provided by Nordstrom. Courts routinely deny jurisdictional discovery requests that operate as premature class discovery, particularly when a removing defendant has already supplied competent, record-based evidence addressing numerosity and the amount in controversy, and when the plaintiff offers no competing evidence or any theory of her own. Plaintiff's request is therefore improper: it seeks to test the merits and explore classwide data rather than resolve any genuine jurisdictional dispute. Because Nordstrom's submissions are more than sufficient for the Court to determine CAFA jurisdiction, and because Rule 26(d) prohibits merits discovery before a Rule 26(f) conference absent court order, Plaintiff's demand for jurisdictional discovery should be rejected.[1]

Based on the foregoing, Nordstrom has amply satisfied the removal requirements. This action should remain before this Court, Plaintiff's request for classwide discovery

[1] The parties have stipulated to continue the Scheduling Conference, any Rule 26(f) conference, and the Joint Rule 26(f) Report until after the hearings on this Motion and Nordstrom's Motion to Compel Arbitration. (ECF No. 17.)

should be declined, and Plaintiff's Motion to Remand should be denied in its entirety.

## II. RELEVANT FACTS AND PROCEDURAL HISTORY

On December 11, 2025, Plaintiff filed a Class Action Complaint against Nordstrom in the Superior Court of California, County of Orange, titled: *HEIDI KING, Individually and for Others Similarly Situated, Plaintiff, vs. NORDSTROM, INC., Defendant* (the "Complaint"). The Complaint asserts the following eight causes of action: (1) failure to pay overtime wages; (2) failure to pay for all hours worked; (3) unlawful withholdings or deductions; (4) failure to reimburse business expenses; (5) waiting time penalties; (6) wage statement violations; (7) failure to maintain accurate records; and (8) unfair business practices. On January 15, 2026, Nordstrom answered the Complaint in state court, and then timely removed this action to the United States District Court for the Central District of California pursuant to CAFA.

### A. Plaintiff's Counsel's Improper Meet And Confer Efforts.

On January 27, 2026, Nordstrom's counsel sent an email to Plaintiff's counsel attaching Plaintiff's multiple Dispute Resolution Agreements with Nordstrom and asking Plaintiff to dismiss her class claims and stipulate to arbitration. (Declaration of Amy Todd ["Todd Decl."], ¶ 2, **Ex. A**.) In response, Plaintiff's counsel indicated that Plaintiff would be filing this Motion. (*Id*., ¶ 3, **Ex. B**.) Nordstrom's counsel requested further meet and confer discussions in an effort to convince Plaintiff's counsel that this Motion would be a waste of time and resources. (*Id*., ¶ 4.)

The parties' attorneys met via video conference on February 2, 2026, at 2:00 p.m. to discuss both Nordstrom's Motion to Compel Arbitration and this Motion. (*Id*., ¶ 5.) During the conference it was clear that Plaintiff would be filing this Motion regardless of its merits unless Nordstrom capitulated to remand or opened its books up to Plaintiff's counsel by providing premature putative class discovery veiled as "jurisdictional discovery." (*Id*.) Nordstrom declined counsel's take-it-or-leave-it proposal. (*Id*.)

/ / /

/ / /

Within an hour of disconnecting the video conference and by 3:10 p.m. the same day, Plaintiff's counsel served Nordstrom with improper classwide discovery. (*Id.*) Plaintiff then filed this Motion at 3:16 p.m. (*Id.*, ¶ 6.)

On February 4, 2026, Nordstrom's counsel emailed Plaintiff's counsel and pointed out that Plaintiff failed to: (1) mention that Plaintiff planned to attack the 100-putative class member requirement under CAFA during the parties' meet and confer call or (2) make any genuine effort to meet and confer given that this Motion was filed within an hour of the video conference, in violation of Local Rule 7–3. (*Id.*, ¶ 7, **Ex. C**.) Further, Nordstrom's counsel directed Plaintiff's counsel to the Honorable Judge Fred Slaughter's recent decision in *Osorio v. Nordstrom, Inc.*, No. 8:25-cv-02552-FWS-(ADSx), ECF No. 37 (C.D. Cal. February 2, 2026), denying Osorio's Motion to Remand on substantially similar grounds. Nordstrom asked Plaintiff to withdraw the Motion. (*Id.*) Plaintiff declined. (*Id.*, ¶ 7.)

On February 6, 2026, Nordstrom's counsel called Plaintiff's counsel to further discuss the issues. (*Id.*, ¶ 8.) During this call, Plaintiff's counsel would not agree to withdraw the Motion; however, he agreed to continue the hearing date so that, at least, the hearing date would comply with Local Rules. (*Id.*) As a result, the parties submitted a stipulation to continue the hearing and corresponding briefing deadlines on this Motion, which this Court granted. (*Id.*, ¶ 9.)

### B. Plaintiff's Complaint Alleges A Statewide Class Subject To Uniform Wage-and-Hour Policies.

Plaintiff alleges she was employed by Nordstrom in its Newport Beach location from approximately May 2023 to January 2025. (*See* ECF No. 1-1 ["Compl."], ¶ 6.) Plaintiff further alleges she was paid on an hourly rate basis, plus commissions. (*Id.*, ¶ 7.) Plaintiff brings this putative class action on behalf of herself and the "Commissioned Employees," defined as: "All current and former non-exempt employees of Nordstrom who worked in California and were paid on an hourly rate basis plus commissions at any time starting 4 years before the filing of this Complaint through final resolution of the Action[.]" (*Id.*,

¶ 8.) Plaintiff alleges that the proposed class is "so numerous that joinder … is impracticable," and pleads, "[u]pon information and belief," that there are "at least 50 members of the putative class." (*Id.*, ¶ 49.)

Plaintiff alleges Nordstrom subjected the putative class to "uniform wage-and-hour policies" and "practices," including alleged failures to compensate for all hours worked (including overtime and minimum wages), unlawful deductions, failure to reimburse expenses, wage statement violations, and recordkeeping failures. (*Id.*, ¶¶ 39–40.) Plaintiff alleges her experiences "confirm… that these unlawful policies and practices were imposed on all members of the proposed class." (*Id.*, ¶ 41.) Plaintiff further alleges that "pay structure, wage statement content, payroll practices, timekeeping procedures, and reimbursement policies" are "common to all Commissioned Employees" and "are determined by reference to Nordstrom's business records and payroll systems." (*Id.*, ¶ 44.)

### C. Plaintiff's Factual Allegations Are Pleaded In Classwide Terms.

Consistent with her uniform-policy theory, Plaintiff pleads the operative factual allegations in expressly classwide terms, as to "King and the other Commissioned Employees." (Compl., ¶¶ 27–32.) Plaintiff alleges she and "the other Commissioned Employees" were "required to report to work approximately 30 minutes before the store's posted opening time and to remain for up to 30 minutes after closing" to perform work-related duties. (*Id.*, ¶ 27.) Plaintiff alleges Nordstrom "did not compensate" her and "the other Commissioned Employees" for this "off-the-clock" work "either for straight time or overtime hours worked." (*Id.*, ¶ 28.) Plaintiff further alleges that "[t]hroughout the relevant time period," she and "the other Commissioned Employees regularly worked more than 8 hours in a day or more than 40 hours in a week but did not receive overtime compensation for all hours worked." (*Id.*, ¶ 29.)

In her Fifth Cause of Action, Plaintiff seeks waiting time penalties pursuant to California Labor Code section 203. (*Id.*, ¶¶ 90–97.) Plaintiff's claim for waiting time penalties alleges and incorporates by reference all prior paragraphs, 1 to 89, of the Complaint. (*Id.*, ¶ 90.) Plaintiff's waiting time penalty claim is premised on her allegation

that Nordstrom failed to pay her and **all other putative class members** all wages due to them at the time of termination. (*See, e.g.*, Compl., ¶ 91 ("King brings the waiting time penalty claims as a class action on behalf of herself and **the other Commissioned Employees who are former employees of Nordstrom** pursuant to CCP § 382".) (emphasis added); *see also* Compl., ¶ 95 ("Nordstrom willfully and deliberately failed to pay all wages due immediately upon separation by withholding earned compensation after the end of employment and ignoring repeated requests for final payment.") Plaintiff's waiting time penalties claim incorporates by reference her allegations that all Commissioned Employees worked at least one hour off-the-clock every time they worked a shift. (Compl., ¶¶ 27–28, 36, 90, 95.) The Complaint alleges that Nordstrom's failure to pay all wages earned prior to separation was willful and that Plaintiff and the former employee putative class members are entitled to waiting time penalties "in the amount of thirty days' wages at the regular rate of pay." (*See id.*, ¶¶ 95–97.)

Plaintiff's waiting time penalty claim alleges a systemic pattern of violations, and does not assert that it is limited to a particular group within the putative class members. Nothing in these allegations meaningfully limits the classwide nature of the claimed exposure or materially cabins the range of reasonable jurisdictional assumptions as to the amount "at stake" under Plaintiff's pleaded theories. (*See, e.g., id.*, ¶¶ 8, 39–41, 44–46, 50, 93–97.)

### D. Nordstrom Used Reasonable Estimates For The Notice Of Removal.

Nordstrom used reasonable, conservative estimates in support of the amount in controversy in its Notice of Removal. Nordstrom asserted that at least 3,100 former employees were eligible for waiting time penalties based on Plaintiff's allegations, which produced an amount in controversy of at least $6,975,000, following a basic mathematical formula of 3,100 separated Nordstrom employees x $15 per hour x 5 hours per day x 30 days. (*See* ECF No. 1 ["Notice of Removal"], ¶¶ 13, 32–35.). These estimates were both conservative and well-founded because:

/ / /

- While over 5,914 Waiting Time Employees[2] separated from employment during the relevant timeframe, Nordstrom used approximately 52.4% of that number, or 3,100.[3] (*Id.*; *see* Brackin Decl., ¶ 8.)
- The minimum wage in California was $15 per hour in 2022 and has since gone up to $16.50 per hour in 2025. (*See* Notice of Removal, ¶ 33.). While the waiting time penalties date range in this action is from December 11, 2022, to the present, Nordstrom used the lowest applicable minimum wage for its calculations, at $15 per hour. Notably, King identified her own hourly rate with Nordstrom as ranging from $16.50 up to $19.00 per hour. (*Id.*, ¶¶ 13, 32–35; Compl., ¶ 25.)
- While Plaintiff alleged that "[t]hroughout the relevant time period, King and the other Commissioned Employees regularly worked more than 8 hours in a day or more than 40 hours in a week," Nordstrom used the conservative, reduced figure of 5 hours per day, rather than 8. (*Id.*; Compl., ¶ 29.)

Based on Nordstrom's personnel and payroll records maintained in the ordinary course of business, there were approximately 5,914 putative class members who worked at a California location and who received an hourly rate and commissions from December 11, 2022, through June 15, 2025, and who separated from employment with Nordstrom.

---

[2] Ms. Brackin defined "Waiting Time Employees" as "Nordstrom's non-exempt employees in California who received an hourly rate and commissions and who separated from employment between December 11, 2022 and on or about June 15, 2025". (Brackin Decl., ¶ 8.)

[3] Because Nordstrom's data used in support of this Opposition runs only through June 15, 2025, Ms. Brackin's declaration extrapolates additional separations through January 15, 2026 (the date of removal) using the comparable June 16, 2024 to January 15, 2025 period, which includes 1,559 Additional Waiting Time Employees. Ms. Brackin defined "Additional Waiting Time Employees" based on "assuming Nordstrom's non-exempt employees in California who received an hourly rate and commission and separated between June 16, 2025 and January 15, 2026 would be similar to the number of known Waiting Time Employees who separated between June 16, 2024 and January 15, 2025. There were 1,559 of these employees with a separation date between June 16, 2024 and January 15, 2025." (Brackin Decl., ¶ 13.)

(Brackin Decl., ¶ 8.) The average hours worked per day by those Waiting Time Employees was 6.87 hours and their average rate of pay at the time of separation was $19.28 per hour. (*Id.*, ¶¶ 9–10.) Using those averages, the daily rate of pay was $132.45, which yields a maximum waiting time penalty for 30 days of $3,973.50 per putative class member. (*Id.*, ¶ 12.) As a result, the maximum waiting time penalties for all putative class members during the three-year period prior to the filing of the complaint could be well over $23,499,279. (*Id.*, ¶¶ 12, 17.) Even taking just 30% of the putative class members into account, or 1,774 putative class members, the waiting time penalties could be over $7,048,989. (*See Id.*, ¶¶ 8, 12, 17.) Again, these numbers are based only on data only up through June 15, 2025 – conservatively extrapolating these amounts increases the amount-in-controversy to over $29 million. (*Id.*, ¶ 15, 16.)

Accordingly, Nordstrom's $6,975,000 estimate of the amount in controversy was reasonable, conservative, and grounded in evidence. Further review of the evidence reveals only that the $5 million requirement is exceeded by millions more, thus amply satisfying the removal standard under CAFA.

## III. ARGUMENT

### A. Plaintiff Misrepresents The Removal Standard Under CAFA.

Plaintiff's Motion is built on the faulty premise that Nordstrom's CAFA removal is defective because the Notice of Removal did not attach payroll rosters, termination reports, or other "summary judgment-type" proof of CAFA jurisdiction. (*See* ECF No. 12 ["Mot."], at 3:7-12.) Plaintiff goes even further and asks the Court to remand (or, alternatively, to order jurisdictional discovery) on the theory that Nordstrom "failed to provide any evidence" establishing numerosity and the amount in controversy. (*Id.* at 9:16-20.) Plaintiff's fictional, heightened standard is foreclosed by controlling legal authorities. As the Supreme Court held, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart*, 574 U.S. at 89. The Ninth Circuit has reiterated that "a removing defendant's notice of removal need not contain evidentiary submissions but only plausible allegations of the jurisdictional

elements." *Arias v. Residence Inn*, 936 F.3d 920, 925 (9th Cir. 2019) (removing defendant may rely on "a chain of reasoning that includes assumptions" and "an assumption may be reasonable if it is founded on the allegations of the complaint"). In addition, the Ninth Circuit has confirmed that *Dart Cherokee* and *Arias* "foreclosed" the argument that a defendant removing under CAFA "must support its [jurisdictional] assertion with competent proof" at the notice stage. *Salter*, 974 F.3d at 964 (holding that a plaintiff's challenge to removal based on lack of evidence "is foreclosed by the Supreme Court's decision in *Dart* and our opinion in *Arias*").

CAFA asks only what amount is "in controversy" under Plaintiff's allegations and requested relief. *Lewis v. Verizon Communs., Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). The Ninth Circuit has repeatedly emphasized that the amount-in-controversy analysis may involve "a chain of reasoning that includes assumptions," and that "an assumption may be reasonable if it is founded on the allegations of the complaint." *Arias*, 936 F.3d at 925. Critically, a defendant "does not need to provide evidence proving the assumptions correct," because that would improperly require the defendant to prove it actually violated the law at the assumed rate. *Id.* at 927. So long as Nordstrom relies on "a reasonable chain of logic" and provides support for its jurisdictional showing once the allegations are contested, it satisfies its burden. *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1201 (9th Cir. 2015).

To be sure, once a plaintiff contests CAFA jurisdiction, the Court determines whether the jurisdictional requirements are satisfied "by a preponderance of the evidence." *Dart Cherokee*, 574 U.S. at 88; *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). Plaintiff's Motion, however, flips the order of operations by demanding that Nordstrom provide evidentiary proof at the notice stage as a prerequisite to removal. As set forth above, Plaintiff's purported requirement is not the law. *Salter*, 974 F.3d at 964; *Arias*, 936 F.3d at 922.

Finally, as even Plaintiff acknowledges, she cannot rely on an "anti-removal presumption." (Mot. at 5:2–3.) The Ninth Circuit has made clear that "no antiremoval

presumption attends cases invoking CAFA," as CAFA was intended to "strongly favor federal jurisdiction over interstate class actions." *Arias*, 936 F.3d at 922; *King v. Great Am. Chicken Corp., Inc.*, 903 F.3d 875, 878 (9th Cir. 2018). Accordingly, Plaintiff's attempts to impose her own heightened standards are inconsistent with CAFA's text and purpose, and should be rejected. *Ibarra*, 775 F.3d at 1197.

**B. Nordstrom Satisfies CAFA's Numerosity Requirement.**

Plaintiff's numerosity challenge fails for a straightforward reason: the class that Plaintiff pleads is statewide and spans four years, making it facially implausible that the putative class could possibly fall below CAFA's 100-member threshold. Plaintiff does not provide a shred of evidence to contrary. Instead, she broadly defines the proposed class as "all current and former non-exempt employees of Nordstrom who worked in California and were paid on an hourly rate basis plus commissions" during the four years prior to filing through final resolution. (Compl., ¶ 8; *see also* Notice of Removal, ¶ 19 (tracking the same "hourly-paid" and "paid on a commission basis" criteria).) Plaintiff's own allegations underscore the breadth of the proposed class and the alleged availability of classwide proof. (Compl., ¶¶ 39–46, 50.)

Plaintiff also admits "there are at least 50 members of the putative class" (*Id.*, ¶ 49.) Her "at least 50" allegation is not a cap or limit. It is pled "[u]pon information and belief," does not purport to set a maximum class size, and does not narrow the class definition that Plaintiff herself chose. (*Id.*) Of course, if Plaintiff somehow believes that Nordstrom employed more than 50 putative class members, but less than 100, over a four-year period, she surely should have some evidence supporting this novel idea. She provides none.

Rather than offering any competing evidence or a coherent alternative class-size theory, Plaintiff frivolously argues that remand is warranted because Nordstrom allegedly failed to "put forth any evidence" of numerosity in its Notice of Removal. (*See* ECF No. 12, Notice of Motion at 2:11-14.) Again, that premise misstates CAFA removal practice, as only a "short and plain statement" of the grounds for removal is required at the notice stage. *Ehrman v. Cox Commc'ns, Inc.*, 932 F.3d 1223, 1227–28 (9th Cir. 2019) (reversing

remand where the district court improperly required evidentiary support beyond the notice in response to a facial challenge). Here, Nordstrom's Notice of Removal did exactly what CAFA requires: it identified Plaintiff's objective class definition and alleged that Nordstrom employed "well in excess of 100" non-exempt California employees "paid on a commission basis" during the relevant period. (Notice of Removal, ¶ 19.)

Even if the Court treats Plaintiff's argument as a factual challenge that requires proof by a preponderance of the evidence, Nordstrom satisfies that burden with competent, record-based declaration testimony from a knowledgeable principal summarizing ordinary-course payroll and personnel records. (Brackin Decl., ¶¶ 1–7.) Those records show that there were at least 5,914 Waiting Time Employees, i.e., non-exempt employees who worked at a California location, who received an hourly rate and commissions, and who separated from employment during the relevant time period, which of course is well in excess of CAFA's 100-member threshold. (Brackin Decl., ¶ 8.) *See, e.g.*, *Avila v. Kiewit Corp.*, 789 F. App'x 32, 34 (9th Cir. 2019) (reversing remand where declaration tied to allegations); *Cavada v. Inter-Continental Hotels Grp., Inc.*, No. 19cv1675-GPC (BLM), 2019 U.S. Dist. LEXIS 190302, at *2–9 (S.D. Cal. Nov. 1, 2019) (denying remand where removal supported by declaration and complaint); *Lucas v. Michael Kors (USA) Inc.*, No. CV 18-1608-MWF (MRWx), 2018 U.S. Dist. LEXIS 78510, at *7–8 (C.D. Cal. May 9, 2018) (rejecting "conclusory" objection where declaration summarized workweeks/pay data); *Vikram v. First Student Mgmt., LLC*, No. 17-cv-04656-KAW, 2017 U.S. Dist. LEXIS 166396, at *7–8 (N.D. Cal. Oct. 6, 2017).

Plaintiff's apparent demand that Nordstrom produce "extensive business records" is also contrary to the prevailing approach in this Circuit. *See Ritenour v. Carrington Mortg. Servs. LLC*, 228 F. Supp. 3d 1025, 1031 (C.D. Cal. 2017) (removal burden "not daunting" and defendant not obligated to prove damages with extensive records); *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204–05 (E.D. Cal. 2008); *Muniz v. Pilot Travel Ctrs. LLC*, 2007 U.S. Dist. LEXIS 31515, at *15 (E.D. Cal. Apr. 30, 2007). Put differently, a defendant "need not produce business records setting forth the precise number of

employees" and "precise calculation of damages" to meet its CAFA burden. *Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147, 1150 (S.D. Cal. 2018) ("… Defendant need not 'produce business records setting forth the precise number of employees in [the] putative class ... and the precise calculation of damages alleged to meet its burden regarding the amount in controversy.'")(citations omitted); *Perea v. Fedex Ground Package Sys.*, No. 20-cv-00610-DMS-AHG, 2020 U.S. Dist. LEXIS 124433, at *12–13 (S.D. Cal. July 15, 2020) ("It is well-settled law that a defendant 'need not 'produce business records setting forth the precise number of employees in [the] putative class . . . and the precise calculation of damages alleged to meet its burden regarding the amount in controversy.'")(citations omitted).

Finally, Plaintiff's numerosity argument appears to comport with the Motion's broader strategy, which is to impose a heightened, extra-statutory evidentiary requirement on Nordstrom at the notice stage and then attempt to leverage that invented standard into early class discovery. Given Plaintiff's own statewide class definition, her "at least 50" pleading in the Complaint, and her uniform-policy allegations (Compl., ¶¶ 8, 39–46, 49–50), the suggestion that the class is somehow more than 50 but fewer than 100 lacks any reasonable basis. Nordstrom therefore requests that the Court deny remand and deny jurisdictional discovery, and, to deter repetition of this improper motion practice, consider appropriate relief under the Court's inherent authority, such as an Order to Show Cause re Rule 11 or an admonition. *Cf. Unutoa v. Interstate Hotels & Resorts, Inc.*, No. 2:14-cv-09809-SVW-PJW, Order Denying Motion to Remand and Ordering OSC re Rule 11 (C.D. Cal. Mar. 3, 2015) (ordering OSC where motion to remand involved factual contentions without adequate evidentiary support).

### C. Nordstrom Satisfies CAFA's Amount-In-Controversy Requirement.

Plaintiff contends Nordstrom has not shown, by a preponderance of the evidence, that the amount in controversy exceeds CAFA's $5,000,000 threshold. However, as set forth above, the amount in controversy is "simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis*, 627 F.3d at 400. Importantly,

Nordstrom is not required to "provide evidence proving the assumptions correct," because that would impose "a requirement that [Nordstrom] prove it actually violated the law at the assumed rate." *Id.* at 927.

Here, Plaintiff's waiting time penalties claim alone places more than $5,000,000 in controversy under conservative, complaint-based assumptions. (Notice of Removal, ¶¶ 32–33; Compl., ¶¶ 93–97.) Plaintiff's additional claims for unpaid wages, unlawful deductions, expense reimbursement, wage statement penalties, and related relief only increase the amount at stake. (Compl., ¶¶ 54–129.)

**1. Plaintiff's Waiting Time Penalties Claim Alone Places More Than $5,000,000 In Controversy.**

Plaintiff's own Complaint frames her action as a statewide, uniform-policy class case against "a large chain of retail department stores." (Compl., ¶ 22.) She defines the proposed class as "all current and former non-exempt Nordstrom employees who worked in California and were paid on an hourly rate basis plus commissions" during the four years prior to filing through final resolution. (*Id*., ¶ 8.). Perhaps Plaintiff's most damning allegation for purposes of removal is that "[she] and the other Commissioned Employees were required to work approximately 30 minutes before the store's posted opening time and to remain for up to 30 minutes after closing to perform work-related duties...", as she apparently claims that every single putative class member worked one hour "off-the-clock" each and every day they worked. (*Id*., ¶¶ 27, 28.) If true, this would trigger waiting time penalties for 100% of the putative class members who are no longer employed with Nordstrom, including exposure to the full statutory maximum under Labor Code section 203. (*Id*.) These allegations support the reasonable, conservative assumptions Nordstrom used to assess the amount in controversy that is at stake here under CAFA.

Plaintiff also alleges that Nordstrom "willfully and deliberately failed to pay all wages due immediately upon separation" by "withholding earned compensation after the end of employment." (*Id*., ¶ 95.) Plaintiff further alleges that all members of the putative class are entitled to thirty days of waiting time penalties as a result. (*Id*., ¶ 97.)

Those allegations place in controversy the statutory maximum waiting time penalty for former putative class members under Plaintiff's theory, as pled. *See, e.g.*, *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 993–94 (9th Cir. 2022) ("Our court has defined the amount in controversy as simply 'the amount at stake in the underlying litigation ....'") (citations omitted); *Lewis*, 627 F.3d at 400 ("The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability."). In addition to and consistent with the governing standard, the amount-in-controversy analysis assumes Plaintiff prevails on liability and asks what is at stake under the requested relief, not what Plaintiff will ultimately prove. *Lewis*, 627 F.3d at 400; *Arias*, 936 F.3d at 925.

Nordstrom's Notice of Removal therefore applied a conservative, complaint-based calculation, and it showed waiting time penalties alone exceed $5,000,000. Specifically, Nordstrom alleged that at least 3,100 putative class members separated employment within the relevant limitations period, and it conservatively assumed $15/hour and five hours/day, which yielded $6,975,000. (Notice of Removal, ¶¶ 32–33.) This figure, standing alone, satisfies CAFA's jurisdictional minimum. (*Id.*)

To the extent Plaintiff contests the factual predicates for that calculation, Nordstrom submits competent jurisdictional evidence in the Brackin Declaration based on ordinary-course payroll and personnel records, establishing the following metrics:

- The total number of Waiting Time Employees, i.e., non-exempt employees who worked at a California location, received an hourly rate and commissions, and separated from employment during the applicable limitations period is approximately 5,914. (Brackin Decl., ¶ 8; *see* Compl., ¶¶ 91, 93–97.)
- The average hourly rate for those Waiting Time Employees was $19.28 and their average daily hours were 6.87 hours/day, or $132.45 per day. (Brackin Decl., ¶¶ 9–10, 12.)

Using those record-based metrics, the waiting time penalties in controversy equals approximately: 5,914 × 30 days x $132.45 = $23,499,279. (*See* Compl., ¶ 97; Brackin

Decl., ¶¶ 8, 12, 17.) Again, even assuming a 30% violation rate, the approximate waiting time penalties could be well over $7,048,989. (*See* Brackin Decl., ¶ 8, 12, 17.) Accordingly, Nordstrom's $6,975,000 estimate of the amount in controversy was reasonable, conservative, and grounded in evidence.

**2. Nordstrom's Assumptions Are Reasonable Because They Are Grounded In Plaintiff's Own Classwide Allegations And Requested Remedies.**

Plaintiff attempts to characterize Nordstrom's estimate as "speculative" and suggests Nordstrom must prove the "actual" number of violations or the "actual" penalty exposure which, as set forth above, is simply not the law under CAFA. (*See* Mot. at 1:17-20; 10:17-18; 11:13-14.)

Here, Plaintiff's Complaint is drafted as a statewide, uniform-policy class case. Plaintiff's waiting time claim is pleaded the same way: classwide and maximum. Plaintiff alleges Nordstrom "willfully and deliberately failed to pay all wages due immediately upon separation" (Compl., ¶ 95), and she seeks waiting time penalties "in the amount of thirty days' wages at the regular rate of pay." (*Id.*, ¶ 97.) On these allegations, Nordstrom's conservative estimate of the maximum waiting time penalty exposure is a reasonable measure of what Plaintiff has placed "at stake" in this litigation. *Lewis*, 627 F.3d at 400; *Arias*, 936 F.3d at 925.

**3. Plaintiff's Additional Claims Further Support That The Amount In Controversy Is Satisfied.**

In sum, the Notice of Removal, Plaintiff's own allegations, and the conservative waiting time penalties calculations demonstrate that Plaintiff's Complaint places at least $5 million in controversy, based on waiting time penalties alone. This amount does not include Plaintiff's additional claims for unpaid wages, unlawful deductions, unreimbursed expenses, wage statement penalties, recordkeeping-related relief, UCL restitution/injunction, and attorneys' fees, all of which would only increase the amount in controversy. (*See* Notice of Removal, ¶¶ 32–33; Compl., ¶¶ 27–32, 54–112, 113–129; Prayer.)

### D. Plaintiff's Motion Should Be Denied Because Plaintiff Offers No Countervailing Evidence Or Alternative Calculations.

Plaintiff does not submit any evidence or any alternative amount-in-controversy calculations in support of her Motion. Typically, when the amount in controversy is contested, "both sides submit proof" and the court decides whether the requirement has been satisfied. *Dart Cherokee*, 574 U.S. at 88. Plaintiff cannot "sit silent" and rely solely on the assertion that it is Nordstrom's burden, particularly where Plaintiff is uniquely positioned to offer evidence about her own experiences or to propose a narrower interpretation of her own allegations. *See Patel v. Nike Retail Servs., Inc.*, 58 F. Supp. 3d 1032, 1042 (N.D. Cal. 2014). While a plaintiff may submit evidence to rebut a removing defendant's showing, Plaintiff offers none here, which fails to justify remand. *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1198 (9th Cir. 2015).

Courts in the Ninth Circuit and this district have consistently denied remand where plaintiffs fail to present contrary evidence. *See, e.g., Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1239 (9th Cir. 2014); *Lewis*, 627 F.3d at 397; *Salter*, 974 F.3d at 963; *Rombaut v. U.S. Concepts LLC*, No. 2:25-cv-02802-AB (Ex)) 2025 U.S. DIST. LEXIS 139081, at *16 (C.D. Cal. 2025); *Ritenour v. Carrington Mortg. Servs. LLC*, No. SACV 16-02011-CJC(DFMx), 228 F. Supp. 3d 1025, 1031 (C.D. Cal. 2017); *Stanley v. Distrib. Alternatives, Inc*., No. EDCV 17-2173 AG (KKx), 2017 U.S. DIST. LEXIS 202035, at *7 (C.D. Cal. 2017); *Roa v. TS Staffing Servs., Inc*., No. 2:14-CV-08424-ODW, 2015 U.S. DIST. LEXIS 7442, at *5 (C.D. Cal. 2015); *Unutoa v. Interstate Hotels & Resorts, Inc*., No. 2:14-cv-09809-SVW-PJW, 2015 U.S. DIST. LEXIS 26545, at *10 (C.D. Cal. 2015); *Heatley v. Lin Rogers Elec. Contractors, Inc.*, No. SACV 22-000042-CJC(KESx), 2022 U.S. Dist. LEXIS 43152, at *4–5 (C.D. Cal. Mar. 10, 2022). Where the complaint supports more than one reasonable assumption, a plaintiff is free to come forward with evidence supporting a "more reasonable" rate, and absent such evidence, a defendant's reasonable interpretation stands. *Perez v. Rose Hills Co.*, 131 F.4th 804, 809–10 (9th Cir. 2025); *Gonzalez v. Peak Cal. Rest. Grp., LLC*, 2025 U.S. Dist. LEXIS 203740, at *5 (N.D. Cal. 2025). In addition,

where the removing defendant provides a well-founded evidentiary record and reasonable extrapolations tied to the complaint, those extrapolations suffice "if unrebutted by the plaintiff." *Patel*, 58 F. Supp. 3d at 1041.

Nordstrom is not required to comb through its records to identify the exact frequency of violations, but may instead choose to substantiate its assumptions and calculations with some pertinent and telling underlying data, which Nordstrom has done here. Nordstrom's showing in this Opposition is more than sufficient to establish the amount in controversy by a preponderance of the evidence. *See Patel*, 58 F. Supp. 3d at 1041; *Lopez*, 2021 U.S. Dist. LEXIS 46029, at *6. Plaintiff's Motion to Remand, on the other hand, has entirely failed to provide competing evidence or meet her required evidentiary standard.

### E. Plaintiff's Alternative Request For Jurisdictional Discovery Should Be Denied.

Plaintiff's requested "jurisdictional discovery" is, in substance, premature class discovery. Plaintiff seeks payroll and timekeeping records for putative class members to "ascertain the actual number of potential class members" and to test damages theories, i.e., merits and class-wide discovery.

As set forth above, Nordstrom adequately supported its Notice of Removal under the governing law of CAFA. In any event, Nordstrom has now provided competent, record-based evidence (including the Brackin Declaration) providing evidence and analysis addressing numerosity and the amount in controversy. Jurisdictional discovery is therefore unnecessary.

Furthermore, the Federal Rules do not permit discovery as a matter of course at this stage. Indeed, absent stipulation or court order, "a party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)." Fed. R. Civ. P. 26(d)(1). Courts routinely deny plaintiffs' alternative requests for jurisdictional discovery in CAFA remand cases where the request functions as a back-door attempt to obtain early class discovery rather than to resolve a genuine jurisdictional dispute. *See, e.g., Jones v. Tonal Systems, Inc.*, No. 3:23-cv-1267-JES-BGS, Order Denying Plaintiff's Motion to

Remand and Request for Jurisdictional Discovery (S.D. Cal. Jan. 31, 2024) ("these jurisdictional determinations should be made largely on the basis of readily available information. Allowing substantial, burdensome discovery on jurisdictional issues would be contrary to the intent of these provisions to encourage the exercise of federal jurisdiction over class actions," and the Court is disinclined "to entertain substantial, burdensome discovery on jurisdictional issues."); *Hawkins v. Walmart, Inc.*, No. 1:24-cv-00374-KES-SKO, Order Denying Motion to Remand and Denying Alternative Request for Limited Jurisdictional Discovery (E.D. Cal. Aug. 22, 2024) (finding CAFA amount in controversy satisfied, denying plaintiff's alternative request for limited jurisdictional discovery).

Jurisdictional discovery is discretionary, and courts are disinclined to permit substantial, burdensome discovery on CAFA jurisdiction. *See, e.g.*, *Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977) ("Refusal to grant discovery is appropriate … 'when it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction'."); *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 692 (9th Cir. 2006) ("[A]ny decision regarding jurisdictional discovery is a discretionary one … including the disinclination to entertain 'substantial, burdensome discovery on jurisdictional issues'."). Discovery should ordinarily be granted only where pertinent facts bearing on jurisdiction are controverted or where a more satisfactory showing is necessary. *See Laub v. U.S. Dep't of the Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003) ("A district court is vested with broad discretion to permit or deny discovery, and a decision to deny discovery will not be disturbed except upon the clearest showing that the denial … results in actual and substantial prejudice…").

Here, jurisdictional discovery is unnecessary because CAFA questions are narrow. They can be resolved through targeted evidence, including counts of class members and separations, plus consecutive pay and hours averages summarized from Nordstrom's ordinary-course business records. Nordstrom has provided that evidence via the Brackin Declaration. *See, e.g.*, *Andrade*, 2019 U.S. Dist. LEXIS 171460, at *13 ("Defendant is not 'required to comb through its records to identify and calculate the exact frequency of

violations," and Defendant "provided evidence: a declaration from a knowledgeable employee based on her analysis of regularly kept and created business records."); *Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147, 1150 (S.D. Cal. 2018) ("There is no obligation … to support removal with production of extensive business records … at this premature (pre-certification) stage of the litigation," Defendant need not "produce business records setting forth the precise number of employees in [the] putative class … and the precise calculation of damages alleged" to meet its burden, and "[A] declaration or affidavit may satisfy the burden."); *Perea*, 2020 U.S. Dist. LEXIS 124433, at *12–13 ("[I]t is well-settled law that a defendant … need not 'produce business records setting forth the precise number of employees … and the precise calculation of damages'.").

Finally, Plaintiff has no basis for requesting class-wide discovery because she has no right to bring putative class claims in the first place. As set forth in Nordstrom's Motion to Compel Arbitration, she is bound by a Class Action Waiver three times over, as she signed Nordstrom's Dispute Resolution Agreement ("DRA") with a Class Action Waiver twice, and also consented to a revised DRA by receiving notice and then continuing employment with Nordstrom. *See, e.g., Osorio v. Nordstrom, Inc.*, No. 8:25-cv-02552-FWS-ADS (C.D. Cal. Feb. 2, 2026) ("Because the court finds that the… DRA was formed between the parties and the… DRA presents a valid and enforceable class action waiver, the court finds that Plaintiff must submit his individual claims to arbitration.").

Based on the foregoing, allowing Plaintiff's requested discovery would convert a jurisdictional motion into early merits and class discovery. It would also impose unnecessary cost and delay. Because Nordstrom has presented a sufficient jurisdictional showing, and because Plaintiff offers no contrary evidence, the Court should deny Plaintiff's discovery request and decide the Motion on the existing record.

## IV. CONCLUSION

Nordstrom has established that CAFA jurisdiction exists because Plaintiff pleads a statewide class based on alleged uniform policies and seeks, among other relief, maximum waiting time penalties, which by themselves place more than $5,000,000 in controversy

under conservative, complaint-based assumptions. Accordingly, the Court should deny Plaintiff's Motion to Remand. In the alternative, if the Court concludes additional information would assist its CAFA analysis, the Court should deny Plaintiff's request for jurisdictional discovery and instead permit Nordstrom to submit any targeted supplemental jurisdictional evidence limited to numerosity and the amount in controversy.

The undersigned certifies that this memorandum contains 6587 words, which complies with the word limit of L.R. 11-6.1.

Respectfully submitted,

DATED: March 31, 2026

JACKSON LEWIS P.C.

By: /s/ *Amy K. Todd*
Amy K. Todd
Kelli M. Dreger

Attorneys for Defendant
NORDSTROM, INC.