UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:26-cv-00121-MRA-KES | Date | July 31, 2026 |
| Title | *Heidi King v. Nordstrom, Inc.* | | |

| | |
|---|---|
| Present: The Honorable | MONICA RAMIREZ ALMADANI, UNITED STATES DISTRICT JUDGE |

| | |
|---|---|
| Melissa H. Kunig | None Present |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| None Present | None Present |

**Proceedings:** **(IN CHAMBERS) ORDER DENYING PLAINTIFF'S MOTION TO REMAND [12]; GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION [15]; AND STAYING MATTER**

Before the Court is Plaintiff's Motion to Remand or, Alternatively, for Limited Jurisdictional Discovery (ECF 12) and Defendant's Motion to Compel Arbitration of Individual Claims and Stay this Action (ECF 15). The Court read and considered the briefing related to these Motions and deemed them appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); L.R. 7-15. For the reasons stated herein, the Court **DENIES** Plaintiff's Motion to Remand and **GRANTS** Defendant's Motion to Compel Arbitration.

## I. BACKGROUND

### A. Factual Background

In May 2023, Plaintiff Heidi King ("Plaintiff" or "King") was hired by Defendant Nordstrom, Inc. ("Defendant" or "Nordstrom") as a salesperson at the Nordstrom located in Newport Beach, California. ECF 1-1, Class Action Complaint ("Compl.") ¶ 24. In August 2023, Plaintiff changed positions and began working for Defendant as a Designated Sales Associate ("DSA"). ECF 15-3, Declaration of Justin Fischbeck ("Fischbeck Decl.") ¶ 6. Defendant terminated Plaintiff's employment in January 2025. Compl. ¶ 34.

Defendant argues that Plaintiff was presented with and electronically signed Defendant's 2022 Dispute Resolution Agreement ("2022 DRA") on April 28, 2023, the day she applied for and accepted the salesperson position, and on August 28, 2023, the day she was offered the new DSA role. Fischbeck Decl. ¶¶ 12-13, 15, Exs. A-E. Defendant updated its DRA in December 2023 (the "2024 DRA") and claims it notified Plaintiff of the new agreement by emailing her a link to the 2024 DRA, uploading the 2024 DRA to her Workday account, and posting the 2024 DRA to Nordstrom's intranet site. *Id.* ¶¶ 18-22, Exs. F-I. Plaintiff allegedly agreed to the 2024

DRA by continuing her employment for more than five days after she was notified of the new agreement. *Id.* ¶¶ 24-25. Plaintiff denies awareness of the DRAs and refutes all claims that she signed the agreements. *See generally* ECF 19-1, Declaration of Heidi King ("King Decl.").

Both DRAs apply "to the resolution of past, present and future Covered Disputes that otherwise would be resolved in a court of law and requires that all Covered Disputes be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial, except as otherwise stated in this Agreement." Fischbeck Decl. ¶¶ 13, 15, 18, Exs. D, E, F. "Covered Disputes" is defined in the DRAs as "any legal disputes arising out of or related to your application for employment with Nordstrom, your employment with Nordstrom, or the termination of your employment with Nordstrom." *Id.* This includes legal disputes arising out of compensation, minimum wage, working conditions, expense reimbursement, overtime, meal and rest periods, and termination. *Id.* The DRAs also include a Class Action Waiver in which the parties agreed to "bring any dispute in arbitration on an individual basis only, and not on a class, collective or representative action basis," thus relinquishing the parties' right to arbitrate claims as a class action. *Id.* Both DRAs include language explaining that parties "knowingly accept and agree" to the DRA by applying for a job at Nordstrom, following the agreement and acceptance process in Workday, accepting employment with Nordstrom, or continuing employment with Nordstrom for five days after receiving the agreement. *Id.* The DRAs also contain a delegation clause which provides that "disputes relating to the validity, applicability, enforceability, unconscionability or waiver of this Agreement, including but not limited to any claim that all or any part of this Agreement is void or voidable, are Covered Disputes and shall be decided by the arbitrator." *Id.*

### B. Procedural Background

Plaintiff filed a putative class action (the "Class Action") against Defendant on December 11, 2025, in Orange County Superior Court. *See generally* ECF 1. Plaintiff, who worked for Nordstrom as an hourly, non-exempt salesperson, alleges that Defendant violated the California Labor Code and engaged in unfair business practices stemming from its failure to adequately compensate Plaintiff for all hours worked during her employment, including refusing to pay her what she was owed after ceasing employment. Compl. ¶¶ 1-5, 24-36. Plaintiff brings eight causes of action against Defendant: (1) failure to pay overtime wages; (2) failure to pay for all hours worked; (3) unlawful withholding or deductions; (4) failure to reimburse business expenses; (5) waiting time penalties; (6) failure to provide accurate itemized wage statements; (7) failure to maintain required payroll and employment records; and (8) unfair business practices. *Id.* ¶¶ 54-130. Plaintiff alleges that "there are at least 50 members of the putative class." *Id.* ¶ 49. Plaintiff defines the class as "all current and former non-exempt employees of Nordstrom who

worked in California and were paid on an hourly rate basis plus commissions at any time starting 4 years before the filing of this Complaint through final resolution of the Action." *Id.* ¶ 8.

On January 15, 2026, Defendant removed the Class Action to federal court pursuant to the Class Action Fairness Act of 2005 ("CAFA"). ECF 1. Defendant maintains that the CAFA requirements are met here: diversity is satisfied because Plaintiff and Defendant are residents of different states (California and Washington, respectively); numerosity is satisfied because there are more than 100 class members; and the amount-in-controversy is satisfied because the waiting time penalty claim alone exceeds $5,000,000. ECF 1 at 6-13. Defendant provided two declarations in support of its Notice of Removal: the declaration of Amy Todd, Defendant's counsel, and the declaration of Dominik Pohlmann, Nordstrom's Senior Director of Human Resources, Technology, Operations, and Analytics. ECF 1-8, 1-9.

On February 2, 2026, Plaintiff filed the instant Motion to Remand. ECF 12. Defendant filed its Opposition on March 31, 2026. ECF 20. Plaintiff filed a Reply in support of its Motion to Remand on April 7, 2026. ECF 21.

On February 20, 2026, Defendant filed the instant Motion to Compel Arbitration. ECF 15. Plaintiff filed its Opposition on March 31, 2026. ECF 19. Defendant filed a Reply in support of its Motion to Compel Arbitration on April 7, 2026. ECF 22.

## II. <u>MOTION TO REMAND</u>

Plaintiff argues that the Court should remand this action to state court because Defendant failed to establish diversity jurisdiction under CAFA. ECF 12.

### A. Legal Standard

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardians Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). Removal of a state action to federal court is proper only if the district court would have had original jurisdiction over the action. 28 U.S.C. § 1441(a). "To remove a case from a state court to a federal court, a defendant must file in the federal forum a notice of removal 'containing a short and plain statement of the grounds for removal.'" *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 83 (2014) (quoting 28 U.S.C. § 1446(a)).

"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). The removing defendant bears

the burden of establishing that removal is proper. *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 685 (9th Cir. 2006). Any doubt about the existence of subject matter jurisdiction must be resolved in favor of remanding the action to state court. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citing *Libhart*, 592 F.2d at 1064); *see also Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009).

The Class Action Fairness Act ("CAFA") was designed by Congress "to permit a defendant to remove certain class or mass actions into federal court" and was intended "to be interpreted expansively." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). "CAFA provides the federal district courts with original jurisdiction to hear a class action if the class has more than 100 members, the parties are minimally diverse, and the matter in controversy exceeds the sum or value of $5,000,000." *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013) (cleaned up) (citing 28 U.S.C. § 1332(d)(1)(D), (d)(2), (d)(5)(B), (d)(6)). "Where the complaint does not specify the amount of damages sought, the removing defendant must prove by a preponderance of the evidence that the amount in controversy requirement has been met." *Abrego Abrego*, 443 F.3d at 683.

**B. Discussion**

It is undisputed that the parties are diverse. *See* ECF 12 at 14. Plaintiff, however, argues that Defendant failed to provide the Court with any evidence demonstrating that the numerosity and amount-in-controversy requirements are met here. *Id.* at 8.

As an initial matter, the Court agrees with Defendant that Plaintiff misconstrues the evidentiary requirement for a notice of removal. The Supreme Court made clear that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation." *Dart*, 574 U.S. at 89. In the Notice of Removal, Defendant asserted that, based on Plaintiff's allegations, the putative class was comprised of at least 3,100 former employees who were eligible for waiting time penalties, which resulted in an amount in controversy of at least $6,975,000. ECF 1 at 11-13. Defendant further explained its methods for calculating these figures, noting that it estimated that each former Nordstrom employee was paid $15 per hour and worked 5 hours per day. *Id.* Therefore, Plaintiff's arguments regarding the insufficiency of evidence presented in Defendant's Notice of Removal lack merit because Defendant plainly included a plausible allegation that the CAFA requirements were met. *See Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) (explaining that "a removing defendant's notice of removal 'need not contain evidentiary submissions' but only plausible allegations of the

jurisdictional elements"); *Vasquez v. RSI Home Prods., Inc.*, No. 820CV01494JWHJDEX, 2020 WL 6778772, at *4 (C.D. Cal. Nov. 12, 2020) (explaining that defendant "has no obligation to support removal by producing extensive business records to prove or disprove ***liability*** or ***damages*** with respect to [plaintiff] or the putative class.") (emphases in original).

More specifically, the following explains why Defendant has met its burden of demonstrating by a preponderance of the evidence that the numerosity and amount-in-controversy requirements are satisfied.

***1. Brackin Declaration***

Defendant filed the Declaration of Holly Brackin ("Brackin") in support of its Opposition to Plaintiff's Motion to Remand. ECF 20-2, Declaration of Holly Brackin ("Brackin Decl."). Brackin is a principal of the Labor & Employment practice of Charles Rivers Associates and was engaged by Defendant to evaluate waiting time penalties for the putative class. *Id.* ¶¶ 5-6. She has over 25 years of experience in data collection and analysis and in advising clients on California wage and hour issues. *Id.* ¶ 5. Defendant provided Brackin with data containing timekeeping information, hourly rates of pay, payroll information, hire dates, and termination information for "commissioned employees separated from employment between December 11, 2022 and or on about June 15, 2025." *Id.* ¶ 6.

Plaintiff argues that Brackin's declaration "lacks proper foundation and is based on hearsay-upon-hearsay-upon-hearsay." ECF 21 at 5. The Court disagrees. Brackin laid the proper foundation in her declaration by stating that the facts set forth in the declaration "are based on [her] review and analysis of termination records, time records, and records of hourly pay rates and commission payments for non-exempt employees working for Defendant in California between December 11, 2022 and or about June 15, 2025." Brackin Decl. ¶ 2. Brackin and her team then narrowed the dataset to match Plaintiff's definition of the class. *Id.* ¶ 8 ("At my direction and with my oversight, my team analyzed Defendant's data containing termination dates and calculated the number of Nordstrom's non-exempt employees in California who received an hourly rate and commissions and who separated from employment between December 11, 2022 and on or about June 15, 2025 ('Waiting Time Employees').").

Plaintiff's cited authority is inapposite. In *Lockhart v. Columbia Sportwear Company*, the court found that the declaration from Defendant's Senior Director of Human Resources lacked foundation and failed to provide sufficient support for the amount-in-controversy analysis. No. 515CV02634ODWPLAX, 2016 WL 2743481, at *4 (C.D. Cal. May 11, 2016). There, the declarant did not describe the records he reviewed and failed to adequately explain the logic behind his computations. *Id.* The court in *Brandon v. C.H. Robinson Co. Inc.* similarly found

that the declaration of defendant's Director of Employee Relations lacked foundation because the declarant assumed the number of hours the putative class members worked per week without reviewing any relevant records on the subject. No. 2:14-CV-966-GEB-DAD, 2014 WL 2624995, at *2-3 (E.D. Cal. June 12, 2014). Here, in contrast, Brackin clearly identified the sources of information she reviewed and described each step of the computation process in her declaration. *See* ECF 20-2. Therefore, Plaintiff's evidentiary arguments against the Brackin declaration fail.

### 2. *Numerosity Requirement*

Because the numerosity requirement is not satisfied on the face of the complaint, Defendants bear the burden of establishing by a preponderance of evidence that the putative class includes at least 100 members. *See Grant v. Cap. Mgmt. Servs., L.P.*, 449 F. App'x 598, 600 (9th Cir. 2011). In the Notice of Removal, Defendant estimated that there were "at least 3,100 putative class members terminated from employment with Nordstrom." ECF 1 at 11. Brackin and her team analyzed the relevant data and determined that there is a total of 5,914 putative class members whose employment terminated between December 11, 2022, and on or about June 15, 2025. Brackin Decl. ¶ 8. Brackin estimated there are 1,559 additional putative class members who were terminated between June 16, 2025, and January 15, 2026, by extrapolating from the data provided. *Id.* ¶ 13.

Plaintiff provides no evidence to rebut Defendant's numerosity estimate and premises her Motion solely on the same argument that Brackin's Declaration lacks foundation and cannot be relied upon. As explained above, Brackin's Declaration does not lack foundation, and courts in this district routinely find that declarations from individuals who have knowledge regarding a defendant's business are sufficient to satisfy the evidentiary burden in challenges to CAFA removals. *See Tomas Osorio v. Nordstrom, Inc.*, No. 8:25-CV-02552-FWS-ADS, 2026 WL 461550, at *3-4 (C.D. Cal. Feb. 2, 2026) (declining to remand a CAFA matter and finding defendant carried its burden by providing a declaration from Brackin that similarly analyzed defendant's employment records and estimated the waiting time penalties for all potential putative class members); *Rodriguez v. US Bank Nat'l Ass'n,* No. 216CV05590CASRAOX, 2016 WL 5419403, at *4 (C.D. Cal. Sept. 26, 2016) (finding that defendant met its burden of establishing the numerosity requirement was met by submitting a declaration of a consultant who analyzed data provided by counsel of defendant and determined there were 2,696 members of the putative class). Accordingly, Defendant has carried its burden and established that there are over 100 members in Plaintiff's putative class.

### *3. Amount-in-Controversy Requirement*

Plaintiff argues that the case should also be remanded because Defendant failed to provide any evidence to support its contention that the amount-in-controversy requirement is satisfied by the waiting-time penalties alone. ECF 12 at 10.

"In determining the amount in controversy, courts first look to the complaint. Generally, 'the sum claimed by the plaintiff controls if the claim is apparently made in good faith.'" *Ibarra*, 775 F.3d at 1197 (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)). In CAFA cases, "the defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million when federal jurisdiction is challenged." *Id.* (citing *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013); *see also Dart*, 574 U.S. at 89 (citing 28 U.S.C. § 1446(c)(2)(B)). In support of their amount in controversy calculations, the "parties *may* submit evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Id.* (emphasis added) (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir.1997)). "Under this system, a defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Id.* "Though a defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions, unproven assumptions can be made part of the defendant's chain of reasoning so long as they have some reasonable ground underlying them." *Avila v. Kiewit Corp.*, 789 F. App'x 32, 33 (9th Cir. 2019) (cleaned up).

Plaintiff does not allege any specific, numeric amounts in expected costs or damages in the Complaint that could be totaled to calculate the approximate amount in controversy. *See generally* Compl. Plaintiff instead requests general relief under the applicable statutes and asserts that the putative class members "continue to suffer substantial damages, in an amount to be proven at trial." *Id.* ¶¶ 54-130. The same is true of Plaintiff's Motion to Remand. Although Plaintiff spends considerable amounts of time critiquing Defendant's calculations, at no point does Plaintiff offer a specific, more reasonable alternative. *See generally* ECF 12. Because Defendant bears the burden of establishing "by a preponderance of the evidence" that the amount in controversy exceeds $5 million, the Court will evaluate Defendant's calculations to determine whether they are sufficiently reasonable under Ninth Circuit law. *Ibarra*, 775 F.3d at 1197; 28 U.S.C. § 1446(c)(2)(B).

Defendant's amount-in-controversy calculation is solely premised on Plaintiff's claim for waiting-time penalties. Plaintiff alleges that Defendant "willfully and deliberately failed to pay all wages due immediately upon separation by withholding earned compensation after the end of

employment" which caused the putative class members "to experience financial loss and hardship." Compl. ¶¶ 95-96. Plaintiff thus claims that "King and the other Commissioned Employees are entitled to waiting time penalties pursuant to Labor Code § 203, in the amount of thirty days' wages at the regular rate of pay." *Id.* ¶ 97.

In the Notice of Removal, Defendant asserted that the amount in controversy is at least $6,975,000 and explained its methods for calculating this figure. ECF 1 at 11-13. Brackin and her team estimated that the average shift length for putative class members who were terminated between December 11, 2022, and June 15, 2025, was 6.87 hours. Brackin Decl. ¶ 9. Brackin further determined that the average base hourly rate when weighted by pay periods was $19.09 per hour and the average base hourly rate upon termination was $19.28 per hour. *Id.* ¶ 10. Brackin then calculated what she termed a "conservative" estimated $90 daily rate of pay based on the minimum wage in 2022, which was $15.00 per hour, and a six-hour shift length. *Id.* ¶ 11. The resulting total estimate of waiting time penalties is $15,967,800 (5,914 putative class members * $90 per day * 30 days). *Id.* Brackin also calculated (1) the total waiting-time penalties with the average shift length (6.87 hours) and last hourly rate ($19.28 per hour) and (2) an extrapolated estimate of waiting-time penalties that accounted for putative class members terminated between June 16, 2025, and January 15, 2026, both of which resulted in millions of dollars more in penalties. *Id.* ¶¶ 12-15.

Defendant's calculations are reasonable based on the Class Action Complaint. First, Defendant's assumption of a 30-day penalty period is reasonable considering Plaintiff's allegations that all putative class members are entitled to 30 days' wages. Compl. ¶ 97; *see also Lucas v. Michael Kors (USA), Inc.*, No. CV181608MWFMRWX, 2018 WL 2146403, *10 (C.D. Cal. May 9, 2018). Second, Defendant's estimated daily rates are in line with Plaintiff's claims that she and the putative class "worked more than 8 hours in a day or more than 40 hours in a week" and that her hourly rate was initially $16.50 per hour but later increased to $19.00 per hour. *Id.* ¶ 25, 29. Accordingly, Defendant's calculation of the amount in controversy for the waiting time penalties is based upon reasonable assumptions that are grounded in Plaintiff's allegations. *See Vasquez*, 2020 WL 6778772, at *10 (finding that defendant's calculation of the amount in controversy for the waiting time penalties claim was based upon reasonable assumptions because it was supported by plaintiff's allegations in the complaint); *see also Avila*, 789 F. App'x at 34 (concluding that defendant "carried its burden to show that its assumptions in calculating the amount in controversy are 'reasonable,' because they are sufficiently grounded in the allegations of the Complaint and the evidence provided"); *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 397 (9th Cir. 2010) (determining that the removing defendant satisfied its burden by providing an affidavit demonstrating that the potential damages exceeded the jurisdictional amount).

Because Defendant's estimate of the waiting time penalties alone is well more than $5,000,000, the Court finds that Defendant has met its burden with respect to the amount-in-controversy and numerosity requirements under CAFA. Thus, the Court **DENIES** the Motion to Remand.[1]

## III. MOTION TO COMPEL ARBITRATION

### A. Legal Standard

The Federal Arbitration Act ("FAA") provides that arbitration agreements generally "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original) (citing 9 U.S.C. §§ 3, 4). "Generally, in deciding whether to compel arbitration, a court must determine two 'gateway' issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)). The party seeking arbitration needs only to prove the existence of an agreement to arbitrate by a preponderance of the evidence. *Norcia v. Samsung Telecoms. Am.*, LLC, 845 F.3d 1279, 1283

[1] Plaintiff demands access to Nordstrom's personnel, payroll, and timekeeping records, but makes no persuasive argument as to why this information must be disclosed at this stage of litigation. While Congress acknowledged that limited discovery may be necessary to make jurisdictional determinations, it made clear in the Senate Judiciary Committee Report regarding CAFA that "[a]llowing substantial, burdensome discovery on jurisdictional issues would be contrary to the intent of these provisions to encourage the exercise of federal jurisdiction over class actions." *Abrego*, 443 F.3d at 692 (citing S.Rep. No. 109–14, at 44). Limited jurisdictional discovery is thus unwarranted here where the CAFA requirements are satisfied by the information made available by the parties. *See Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147, 1150 (S.D. Cal. 2018) ("[A defendant] need not 'produce business records setting forth the precise number of employees in [the] putative class . . . and the precise calculation of damages alleged to meet its burden regarding the amount in controversy.'") (citation omitted); *Ritenour v. Carrington Mortg. Servs. LLC*, 228 F. Supp. 3d 1025, 1031 (C.D. Cal. 2017) ("Defendant's detailed, reasonable calculations, supported by the Crawford declaration, are sufficient to meet this burden, especially since Plaintiffs offer no alternative amount-in-controversy or rebuttal evidence.").

(9th Cir. 2017).

**B. Discussion**

Here, Plaintiff argues that the DRAs are invalid because Defendant cannot prove that Plaintiff signed the 2022 DRA or that Plaintiff had actual knowledge of the 2024 DRA. ECF 19. Plaintiff also argues that the agreements may not be enforced because doing so would violate her Seventh Amendment right to a jury. *Id.* The Court addresses each issue in turn.

***1. Validity of the 2022 DRA***

Plaintiff argues that Defendant failed to present any evidence "proving it was actually King who received an email from DocuSign, opened the DocuSign email, clicked the link to the DocuSign server, or affixed her name to the 2022 DRA." ECF 19 at 15.

To determine "whether a valid contract to arbitrate exists," courts apply "ordinary state law principles that govern contract formation." *Davis v. Nordstrom, Inc.*, 755 F.3d 1089, 1093 (9th Cir. 2014) (citations omitted). Neither party disputes that California law governs the validity of the arbitration agreement. *See generally* ECF 15, 19. "Under California law, mutual assent is a required element of contract formation." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014). "Mutual assent may be manifested by written or spoken words, or by conduct." *Binder v. Aetna Life Ins. Co.*, 75 Cal. App. 4th 832, 850 (1999). As the party moving to compel arbitration, Defendant bears "the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Norcia v. Samsung Telecomm. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017) (citations omitted).

Here, Plaintiff argues that she did not consent to the 2022 DRA because there is no evidence that she electronically affixed her signature to the 2022 DRA. Because Plaintiff refutes the validity of her signature, Defendant bears "the burden of proving by a preponderance of the evidence that the electronic signature was authentic." *Ruiz v. Moss Bros. Auto Grp.*, 232 Cal. App. 4th 836, 846 (2014).

Under California law, "[an] electronic signature is attributable to a person if it was the act of the person . . .[, which] may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable." Cal. Civ. Code § 1633.9. To authenticate an electronic signature, "a party may present evidence that the signatory was required to use a unique, private login and password to affix the electronic signature, along with evidence detailing the procedures the person had to follow to electronically sign the document and the accompanying security precautions."

*Garcia v. Stoneledge Furniture LLC*, 102 Cal. App. 5th 41, 53 (2024) (citing *Espejo v. S. California Permanente Med. Grp.*, 246 Cal. App. 4th 1047, 1062 (2016)).

Justin Fischbeck, Nordstrom Senior Manager of HR Policy and Enterprise Compliance, submitted a declaration in support of Defendant's Motion and attached copies of the 2022 DRA purportedly signed by Plaintiff in April 2023 and August 2023. Fischbeck Decl. ¶¶ 13, 15, Exs. D, E. Both documents include the electronic signature of "Heidi King." *Id.* Fischbeck explained the process through which Plaintiff was prompted to sign the documents via DocuSign through the Workday system. *Id.* The Workday report shows that Plaintiff logged into her account on August 28, 2023, from a desktop bearing the same IP address used for most of her login entries. *Id.* ¶ 17, 21, Ex. I. Defendants submitted a second declaration from Fischbeck in support of its Reply. ECF 22-2, Declaration of Justin Fischbeck ("Fischbeck Reply Decl."). Fischbeck attached to his sworn declaration copies of the DocuSign Certificates of Completion for Plaintiff's signing of the 2022 DRA on April 28, 2023, and August 28, 2023. *Id.* ¶¶ 5-6, Exs. A, B. The Certificates show that Plaintiff accessed and signed the 2022 DRA through her personal email on April 28, 2023, and through her work email on August 28, 2023. *Id.* There is only one logical conclusion based on the evidence presented: Plaintiff is the sole individual responsible for signing the 2022 DRA electronically on both occasions.

Plaintiff's cited authority is unpersuasive. In *Bannister v. Marinidence Opco,* LLC, the court found that the defendant's evidence "did not establish that [plaintiff] was assigned a unique, private user name and password such that she is the only person who could have accessed the onboarding portal and signed the agreement." 64 Cal. App. 5th 541, 547 (2021), *as modified* (May 21, 2021). The *Bannister* plaintiff also provided evidence that defendant onboarded employees, including by signing arbitration agreements on their behalf, without their participation. *Id.* at 546-47. Here, Plaintiff provides no evidence beyond her declaration denying that she signed the 2022 DRA. King Decl. ¶¶ 3-7.[2] But Plaintiff's declaration is

[2] Defendant filed evidentiary objections to Plaintiff's Declaration, arguing that portions of the declaration are irrelevant (FRE 401), prejudicial (FRE 403), speculative (FRE 602), or lack foundation (FRE 901). ECF 22-1. "On a Motion to Compel Arbitration, the Court applies a standard similar to the summary judgment standard applied under Rule 56 of the Federal Rules of Civil Procedure." *McKee v. Audible, Inc.*, No. CV 17-1941-GW(EX), 2017 WL 7388530, at *3 (C.D. Cal. Oct. 26, 2017) (citing *Concat LP v. Unilever, PLC*, 350 F.Supp.2d 796, 804 (N.D. Cal. 2004)). At this stage, courts do not "focus on the admissibility of the evidence's form," but rather "on the admissibility of its contents." *Sandoval v. County of San Diego*, 985 F.3d 657, 666 (9th Cir. 2021) (citations omitted). "[E]xcept in the rare instances in which the objecting party demonstrates with specificity that the subject evidence could not be produced in a proper format

insufficient to create a genuine issue of material fact because it includes conclusory, self-serving statements and is "lacking detailed facts and any supporting evidence." *FTC v. Publishing Clearing House*, 104 F.3d 1168, 1171 (9th Cir. 1997).

*Fabian* and *Ruiz* are also distinguishable because the defendants in those cases failed to articulate the process through which plaintiff electronically signed the arbitration agreement and did not provide evidence authenticating plaintiff's signature. *See Fabian v. Renovate America, Inc.*, 42 Cal. App. 5th 1062, 1069 (2019) (noting that the word "DocuSign" did not appear in any of its briefing despite being the method through which the agreement was executed); *Ruiz v. Moss Bros. Auto Grp.*, 232 Cal. App. 4th 836, 843 (2014) ("Main summarily asserted in her initial declaration that Ruiz was the person who electronically signed the 2011 agreement 'on or about September 21, 2011,' but she did not explain how she arrived at that conclusion or inferred Ruiz was the person who electronically signed the 2011 agreement."). Unlike the defendants in *Fabian* and *Ruiz*, Defendant adequately explained the Workday system through which Plaintiff logged in using a "unique personal username and password" that is confidential and unknown to other Nordstrom employees, the process through which Plaintiff was required to sign the 2022 DRA through DocuSign, and the sign-in information demonstrating that Plaintiff signed into Workday using the device she typically used to login to her account at the time the 2022 DRA was signed. Fischbeck Decl. ¶¶ 9-17.

After reviewing all evidence submitted, the Court determines that Defendant has demonstrated by a preponderance of the evidence that Plaintiff electronically signed the 2022 DRA through DocuSign. *See Espejo*, 246 Cal. App. 4th at 1062 (finding that defendant's declaration offered the "critical factual connection" to authenticate plaintiff's electronic signature on the arbitration agreement by detailing defendant's "security precautions regarding transmission and use of applicant's unique username and password, as well as the steps an applicant would have to take to place his or her name on the signature line" and the "date, time, and IP address" listed on the agreement); *Newton v. Am. Debt Servs.*, 854 F.Supp.2d 712, 731-32 (N.D. Cal. 2012) (finding that an arbitration agreement signed via DocuSign was valid because defendant sufficiently demonstrated assent by explaining the process used to verify the signature).

at trial, the court does not consider any objections on the grounds that the evidence 'constitutes hearsay or inadmissible lay opinion, or that there is a lack [of] personal knowledge.'" *Pierre v. IEC Corp.*, No. 8:22-cv-01280-FWS-JDE, 2023 WL 3551962, at *4 n.1 (C.D. Cal. Mar. 14, 2023). All evidentiary objections are overruled unless otherwise indicated.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 8:26-cv-00121-MRA-KES | Date | July 31, 2026 |
|---|---|---|---|
| Title | *Heidi King v. Nordstrom, Inc.* | | |

***2. Validity of the 2024 DRA***

Plaintiff argues that the 2024 DRA is invalid because she had neither actual nor constructive notice of the agreement. ECF 19 at 22-23.

"Where an arbitration agreement does not require the employee to sign or acknowledge the agreement for it to be binding, courts have found assent where the employer provided inquiry or constructive notice." *Thorne v. Comerica Bank*, No. CV233178MWFRAOX, 2023 WL 6194370, at *3 (collecting cases); *see also Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014) (arbitration is enforceable where the employer puts "a reasonably prudent [employee] on inquiry notice of the terms of the contract").

Here, the Court finds that a reasonably prudent employee would have been on notice of the agreement. Defendant sent emails to Plaintiff's personal and work accounts alerting her of changes to the DRA and providing a link to the 2024 DRA; uploaded the 2024 DRA to Plaintiff's Workday account, which Plaintiff logged into over 20 times during the relevant time period, and posted a notice of the DRA to the landing page; and separately posted the 2024 DRA to the intranet, which Plaintiff was expected to review. Fischbeck Decl. ¶¶ 18-25. In the Court's view, these efforts were sufficient to put Plaintiff on either inquiry notice or constructive notice. *See McCarthy v. Xerox Corp.*, No. 8:25-cv-01976 ADS, 2026 WL 413631, at *4–5 (C.D. Cal. Feb. 3, 2026) (finding there was a valid agreement to arbitrate where employee was notified via email of agreement requiring arbitration of most legal disputes between him and his employer).

Plaintiff's failure to acknowledge receipt cannot void the existence of the agreement. *See Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 245 (2012) ("[W]e decline to read additional unwritten procedural requirements, such as actual notice and meaningful reflection, into the arbitration statute."); *Davis*, 755 F.3d at 1094 (affirming that an employee assented to a revised arbitration agreement after the employer "satisfied the minimal requirements under California law for providing employees with reasonable notice" by sending employees letters about the updated arbitration agreement).

The 2024 DRA provides that an employee accepts and agrees to the 2024 DRA by continuing employment with Defendant for five days after receiving the agreement. Fischbeck Decl. ¶¶ 24-25, Ex. F. Here, Plaintiff accepted the terms of the 2024 DRA by continuing her employment until January 7, 2025, more than five days after she received the agreement on December 21, 2023. *See id.* Accordingly, the Court finds by a preponderance of the evidence that a valid arbitration agreement exists here. *See Diaz v. Sohnen Enterprises*, 34 Cal. App. 5th 126, 130 (Cal. Ct. App. 2019) ("California law in this area is settled: when an employee continues his or her employment after notification that an agreement to arbitration is a condition of continued

employment, that employee has impliedly consented to the arbitration agreement.").

### ***3. Seventh Amendment***

Plaintiff argues that Defendant has not shown that Plaintiff knowingly and voluntarily waived her Seventh Amendment right to a jury trial. ECF 19 at 25-31. This argument lacks merit. The California Supreme Court has ruled that "arbitration agreements are distinguishable from waivers of the right to jury trial in that they represent an agreement to avoid the judicial forum altogether." *Grafton Partners v. Superior Ct.*, 36 Cal. 4th 944, 955 (2005) (citing *Madden v. Kaiser Found. Hosps.*, 17 Cal. 3d 699 (1976)). As the court noted in *Grafton Partners*, "the Legislature has enacted a comprehensive scheme *authorizing* predispute arbitration agreements (§ 1280 et seq.), expressing a strong state policy favoring arbitration," *id.* at 964, which Plaintiff implicitly acknowledges, *see* ECF 19 at 14. Therefore, Plaintiff's argument is misplaced here where there is a valid arbitration agreement.

***

As explained above, both the 2022 and 2024 DRAs are valid agreements, and Plaintiff does not challenge the delegation clause, which means that the Court must treat it as valid, too. *See Manfredi v. Vivint Solar Dev. LLC*, No. 821CV01195JVSDFMX, 2021 WL 8441831, at *3 (C.D. Cal. Sept. 24, 2021) ("[I]f a party does not challenge a delegation clause 'specifically,' the Court 'must treat it as valid under § 2 [of the Federal Arbitration Act], and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator.'") (citing *Rent-A-Center, W. Inc. v. Jackson*, 561 U.S. 63, 72 (2010)). Accordingly, the Court **GRANTS** the Motion as to Compel Arbitration. The parties are directed to arbitrate Plaintiff's individual claims pursuant to the DRAs.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** the Motion to Remand [12] and **GRANTS** the Motion to Compel Arbitration [15]. This matter shall be **STAYED** and **CLOSED** for administrative reasons pending arbitration. The parties shall notify the Court within **14 days** after the conclusion of arbitration or receipt of an arbitral ruling, whichever is later, and inform the Court whether this case should be reopened to active status.

**IT IS SO ORDERED.**

- : -

Initials of Deputy Clerk mku